GRAHAM v. CITY OF SAGINAW.

1. TAXATION—GENERAL LEVY.

The general levy of taxes is understood to exact contributions in return for the general benefits of government and promises nothing to the persons taxed beyond what may be anticipated from an administration of the laws for individual protection and the general public good.

2. SAME—SPECIAL ASSESSMENTS—SPECIAL BENEFITS—VALUE.

Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes and are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated, at least equal to the sum required to be paid.

3. SAME—TAX LIMITATION—SPECIAL ASSESSMENTS.

Special assessments are not within the constitutional property tax limitation of 1½ per cent. of the assessed valuation of property (Const. 1908, art. 10, § 21, added in November, 1932).

4. MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—SPECIAL ASSESSMENTS.

Special assessments are not necessarily void merely because there was an absence of a certificate showing that the assessments were levied in proportion to the benefits derived where neither the home-rule act or charter granted thereunder require such certificate and the city officials have acted in conformity with provisions of the statute, charter and city code in imposing assessments for ⅔ of cost of street improvement upon abutting owners (1 Comp. Laws 1929, § 2228 *et seq.*).

5. SAME—STREET IMPROVEMENTS—APPORTIONMENT OF BENEFITS—PRESUMPTION OF GOOD FAITH.

A city council is presumed to have acted in good faith and to have correctly exercised its discretion in apportioning benefits of street improvement.

6. SAME—SPECIAL ASSESSMENTS FOR PAVING—DISCRETION OF OF-
FICERS—BURDEN OF PROOF.
    In suit to have certain street paving assessments declared void,
    plaintiffs *held*, not to have sustained burden of showing that
    the special assessments of ⅔ of the cost were not levied in
    proportion to the benefits derived or that the city council
    abused its discretion.

7. COSTS—PUBLIC QUESTION—SPECIAL ASSESSMENTS.
    No costs are allowed in suit to declare special assessments for
    street improvement void, where question involved is a public
    one.

Appeal from Saginaw; Davis (Morris K.), J., pre-
siding. Submitted January 9, 1947. (Docket No. 46,
Calendar No. 43,598.) Decided April 17, 1947.

Bill by Frank Graham and others against City of
Saginaw to restrain collection of special assessments
and to have lien against property set aside. Decree
for plaintiffs. Defendant appeals. Reversed.

*David E. McLaughlin (Alfred P. Pierson,* of coun-
sel), for plaintiffs.

*Crane & Crane & Kessel, Donald W. Gilbert* and
*W. Vincent Nash,* City Attorney, for defendant.

BUSHNELL, J. This is an appeal from a decree
declaring certain street paving assessments void.
The trial judge found that section 62 of chapter 9
of the charter of the city of Saginaw was unconsti-
tutional and void and that the assessment procedure
was defective because "no certificate was made that
the assessments were made in proportion to benefits
derived."

The trial judge summarized his conclusions as fol-
lows:

"The assessments are void inasmuch as they were
made in pursuance to an unconstitutional section of

the charter.  Had the charter required that assessments be made in proportion to benefits derived, the proceeding would still be void because there was no certificate to the effect that the assessments were so made.  The assessments in fact were not made in proportion to benefits received.  The lack of said requirements in said charter, the lack of such certificate and the fact that the assessments were not made in proportion to benefits derived added together, offend most grossly against the fundamental principle that every safeguard must be provided to insure that special assessments must be made in proportion to the benefits derived by the property assessed.

"The plaintiffs are not barred from maintaining this action because the suit was not commenced before the work was completed and contractors paid for the reason that the equities are with the plaintiffs and for the further reason that the assessments are absolutely void."

Defendant city of Saginaw has been a home-rule city since 1935.  Its present charter was drafted pursuant to the provisions of the home-rule act (Act No. 279, Pub. Acts 1909, as amended [see 1 Comp. Laws 1929, § 2228 *et seq.* (Stat. Ann. § 5.2071 *et seq.*)]).  It has functioned under a council-manager form of government since January 6, 1936.

On August 4, 1941, the city council by resolution initiated special assessment projects for the resurfacing of certain city streets, including those in question, *viz.,* Bond street from Court to Genesee, and Porter street from Gratiot to Court.  The pavement on these streets was in bad condition and greatly in need of repair.  Since 1937 a private corporation has been operating a bus line on Bond street under a franchise from the city.

The procedure used in levying the special assessments in question followed the provisions of the general code of Saginaw, particularly chapter 5

thereof. Objections. made by abutting property owners were unanimously overruled by the council; the assessment rolls were prepared; the assessment districts were determined and the work was completed. The total cost of resurfacing Bond street from Court to Genesee amounted to $19,210.52. Of this amount, $12,806.78 was assessed against properties in the assessment district, and $6,403.74, representing the cost of repaving intersections, was assessed against the city at large. The total cost of repaving Porter street from Gratiot to Court was $7,363.57, of which $4,916.47 was spread as a special assessment, and the cost of repaving intersections amounting to $2,447.10 was spread at large.

The director of public works of the city of Saginaw testified that the city council made a determination of the benefits, and the cost of the improvements was apportioned accordingly. The assessment rolls do not contain a certificate to this effect by the city manager or any other official. The record shows, however, that the city council approved the tentative special assessment rolls as submitted by the special assessment board, which the board had determined to be "fair and equitable." After the improvements had been completed and their actual costs determined, the city council, on March 29, 1943, confirmed the final assessment rolls.

The total special assessments levied were made payable in 10 annual instalments, and some of the plaintiffs paid their first instalment.

It is conceded that the tax levy of the city for the year in which the special assessments were levied had already reached the constitutional limit of 1½ per cent. of the assessed value of property subject to taxation in the city.

The trial judge found it unnecessary to pass upon plaintiffs' contention that the assessments were void

"because they are in violation of article 10, § 21, of the Constitution of Michigan known as the fifteen mill amendment * and chapter 7, § 45 of the city charter."

However, we deem it proper on our *de novo* review to discuss that question. This constitutional limitation on taxation reads as follows:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property except taxes levied for the payment of interest and principal on obligations heretofore incurred, which sums shall be separately assessed in all cases: Provided, That this limitation may be increased for a period of not to exceed five years at any one time, to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation: Provided further, That this limitation shall not apply to taxes levied in the year 1932."

The distinction between taxes levied for general purposes and special assessments is well recognized.

"Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes and governed by principles that do not apply universally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the

---

* Added in November, 1932.—REPORTER.

value of property peculiarly situated as regards a contemplated expenditure of public funds; and in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay." 2 Cooley on Taxation (3d Ed.), p. 1153.

This distinction was emphasized in *Re Petition of Auditor General,* 226 Mich. 170, where Mr. Justice NELSON SHARPE, speaking for the Court, said:

"There is a clear distinction between what are termed general taxes and special assessments. The former are burdens imposed generally upon property owners for governmental purposes without regard to any special benefit which will inure to the taxpayer. The latter are sustained upon the theory that the value of the property in the special assessment district is enhanced by the improvement for which the assessment is made." (See, also, authorities therein cited.)

This distinction has been followed by various attorneys general in their advice to those charged with the levying and collection of special assessments. (See Opinions of the Attorney General, November 7, 1933, p. 387, March 7, 1940, April 16, 1940, March 30, 1944, p. 693, and October 17, 1944, 1945–1946, p. 96). See, also, *Blake* v. *Metropolitan Chain Stores,* 247 Mich. 73 (63 A. L. R. 1386), and *School District of City of Pontiac* v. *City of Pontiac,* 262 Mich. 338.

We must therefore conclude that special assessments are not within the constitutional tax limit of

1½ per cent. of the assessed valuation of property.

Under section 4d of the home-rule act, as added by Act No. 126, Pub. Acts 1929 (1 Comp. Laws 1929, § 2234 [Stat. Ann. § 5.2077]).:

"Each city may in its charter provide:

"(1) For assessing and re-assessing the costs or any portion thereof, of any public improvement to a special district."

In *Wylie* v. *City Commission of the City of Grand Rapids,* 293 Mich. 571, 588, this Court held that home-rule cities have—"the power to either charge the entire cost of street improvements to the abutting property owners or spread it over the city at large."

The charter of the city of Saginaw provides:

"SEC. 62. The council shall have power to determine that the whole or any part of the expense of any public improvement shall be defrayed by special assessments upon the property especially benefited and shall so declare by resolution. Such resolution shall state the estimated cost of the improvement, what proportion of the cost thereof shall be paid by special assessments, and what part, if any, shall be a general obligation of the city, the number of instalments in which assessments may be paid, and shall designate the districts or land and premises upon which special assessments shall be levied.

"SEC. 63. The council shall prescribe by general ordinance complete special assessment procedure concerning plans and specifications, estimate of costs, notice and hearing, the making of the assessment roll and correction of errors, the collection of special assessments, and any other matters, concerning the making of improvements by the special assessment method."

Such a procedure is prescribed in chapter 5 of the Saginaw general code.

The trial judge held that section 62 of the Saginaw charter was unconstitutional and void, because it did not provide that such special assessments must be made in proportion to the benefits derived, citing *City of Detroit* v. *Judge of Recorder's Court,* 112 Mich. 588 (42 L. R. A. 638). That case, however, involved a street opening and the power of the city to condemn land for that purpose. It was decided prior to the adoption of the Constitution of 1908 and the enactment of the home-rule act containing the permissible charter provision hereinbefore quoted. The distinction between street opening and street paving cases was recognized in Mr. Justice CARPENTER's concurring opinion in *Stevens* v. *City of Port Huron,* 149 Mich. 536, 545 (12 Ann. Cas. 603). See, also, *Cass Farm Co.* v. *City of Detroit,* 124 Mich. 433.

As said by Mr. Justice COOLEY in *Sheley* v. *City of Detroit,* 45 Mich. 431:

"The questions, then, are questions of legislative power. Whether this method of apportioning the cost of pavement or of repavement is equitable or just or politic, is in no way involved in this suit, and we should depart from our legitimate province if we were to volunteer an opinion upon it. The legislature, acting within the sphere of its powers in the making of laws, judges, and judges finally, upon all questions of policy and of equity. If the legislature declares the cost shall be collected by general levy, or on the other hand shall be levied upon abutting lots or their owners according to values, or to assessed benefits or to frontage, the determination binds us absolutely and conclusively, provided we discover no want of legislative authority. We must then address our attention to that point, and to that exclusively."

We cannot agree with the view of the trial judge that the special assessments in question are void

because of the absence of a certificate showing that the assessments were levied in proportion to the benefits derived.

The charter, adopted in conformity with the powers granted under the home-rule act, does not require such a certificate. The record shows that the city officials acted in conformity with the provisions of the home-rule act, the city charter and the general code.

The city council is presumed to have acted in good faith and correctly exercised its discretion in apportioning the benefits. *Powers* v. *City of Grand Rapids,* 98 Mich. 393; *Shimmons* v. *City of Saginaw,* 104 Mich. 511, and *Nelson* v. *City of Saginaw,* 106 Mich. 659. Plaintiffs in this case have not sustained the burden of showing that the special assessments were not levied in proportion to the benefits derived, or that the city council abused its discretion.

The decree of the trial court is vacated and one may be entered here dismissing plaintiffs' bill of complaint, in conformity with this opinion. A public question being involved, no costs will be allowed.

CARR, C. J., and BUTZEL, SHARPE, REID, and NORTH, JJ., concurred. DETHMERS, J., did not sit.