## DIXON ROAD GROUP v CITY OF NOVI

Docket No. 75767. Argued March 5, 1986 (Calendar No. 13). Decided
November 6, 1986. Rehearing denied 428 Mich 1201.

Dixon Road Group and Novi-Twelve Associates, owners of certain
real property within the City of Novi, challenged the creation
of special assessment districts and the levy of special assess-
ments by the city against the properties for construction of a
road system and water main and storm drainage improve-
ments. The Tax Tribunal rejected a hearing officer's findings
for the petitioners and upheld the special assessments. The
Court of Appeals, V. J. Brennan, P.J., and T. M. Burns and
Forster, JJ., affirmed in an unpublished opinion per curiam
(Docket No. 71807). The Supreme Court remanded the case to
the Tax Tribunal for specific findings with regard to whether
any benefits would be conferred upon the petitioners' proper-
ties, including any increase in valuation after the proposed
improvements if the zoning was not changed and if the zoning
was changed to planned development or some other use. 422
Mich 858 (1985). On remand, the tribunal adopted findings
consistent with the findings of a hearing officer that the cost of
improvements would exceed the increase of the true cash value
of the properties resulting from the improvements. After re-
mand, the petitioners appeal.

In an opinion by Chief Justice Williams, joined by Justices
Levin, Cavanagh, and Archer, the Supreme Court held:

The factual findings of the Tax Tribunal, while supported by
competent, material, and substantial evidence, cannot be up-
held because of the large disproportionality between the
amount of the special assessment and the benefits to the
properties.

1. A special assessment must be supported by a showing of an
increase in the market value of the assessed property reason-
ably proportional to the cost incurred. It is insufficient to show

References

Am Jur 2d, Special or Local Assessments §§ 9 et seq., 18 et seq., 87
et seq.

See the annotations in the ALR3d/4th Quick Index under Special
Assessments.

only that the property was relieved of a burden or was made specially adaptable to a purpose which would enhance its value.

2. Although decisions by municipalities with respect to special assessments generally will be upheld, the Supreme Court will intervene where there is a substantial or unreasonable disproportionality between the amount assessed and the value accruing to the land as a result of the improvement. In this case, the cost of improvement was 2.6 times greater than the increase in the value of the properties.

Reversed.

Justice BOYLE, joined by Justices BRICKLEY and RILEY, dissenting, stated that the decision of the Tax Tribunal affirming the levy of the special assessment by the city was supported by competent, material, and substantial evidence on the whole record and should be affirmed.

1. The creation of a special assessment district by a municipality enjoys a presumption of validity. Whether any benefit will accrue, or the amount of benefit, is best decided by the body imposing the assessment. Where a municipality acts in good faith and has good reason to believe that benefits will accrue as a result of an assessment, and there is no showing of fraud, mistake, discrimination, or a clear absence of benefits, courts are reluctant to interfere. In this case, the Tax Tribunal found a reasonable basis for the city's conclusion that the petitioners' properties would be specially benefited by the challenged improvements.

2. Special assessments for improvements such as those challenged in this case must be based on special benefits to the land assessed. A municipality's determination of the existence and extent of special benefits is presumed valid and may be based upon an increase in value, relief of burdens to the land, or creation of special adaptabilities in the land which enhance the value of the land. While an increase in value established by an appraisal reflecting market value is appropriate evidence of a special benefit, it is not a prerequisite to a finding of a special benefit. In determining whether property will be benefited by a particular improvement, inquiry is not limited to present use, but extends to potential use, including use rendered more feasible by the improvement. In this case, in addition to an increase in value, the Tax Tribunal found that the proposed improvements would result in relief of existing burdens upon and would create a special adaptability in the land for development. These findings sustain the city's initial determination that special benefits to the properties would accrue as a result of the assessments.

3. The record supports the findings of the Tax Tribunal that

the city complied with the applicable city ordinance in considering and prescribing what proportion of the improvements would be paid by special assessment, what benefits would be received by the affected properties, and whether any part of the cost of the improvements should be borne by the city at large. It also supports the finding that the petitioners' properties will be benefited in a manner unique from the community as a whole.

4. Because this is not a case which turned upon credibility, the petitioners' contention that the decision of the hearing officer should be adopted on the ground that the officer was in the best position to determine credibility and make findings of fact cannot be accepted.

Opinion of the Court

1. Taxation — Special Assessments — Value Accruing to Land — Invalidation.

Decisions by municipalities with respect to special assessment of property generally will be upheld; however, assessments will be invalidated where a substantial or unreasonable disproportionality exists between the amount assessed and the value which accrues to the land as a result of improvement.

2. Taxation — Special Assessments — Value Accruing to Land.

A special assessment must be supported by a showing of an increase in the market value of the assessed property reasonably proportional to the cost incurred; it is insufficient to show only that the property was relieved of a burden or was made specially adaptable to a purpose which would enhance its value.

Dissenting Opinion by Boyle, J.

3. Taxation — Special Assessments — Municipal Corporations.

*The creation of a special assessment district by a municipality enjoys a presumption of validity; whether any benefit will accrue, or the amount of benefit, is best decided by the body imposing the assessment, and where a municipality acts in good faith, has good reason to believe that benefits will accrue as a result of an assessment, and there is no showing of fraud, mistake, discrimination, or a clear absence of benefits, courts will be reluctant to interfere.*

4. Taxation — Special Assessments — Special Benefits.

*Special assessments for improvements of property should be based on special benefits to the land assessed; a municipality's determination of the existence and extent of special benefits is*

*presumed valid and may be based upon an increase in value, relief of burdens to the land, or creation of special adaptabilities in the land which enhance the value of the land.*

5. TAXATION — SPECIAL ASSESSMENTS — SPECIAL BENEFITS.

*Inquiry whether certain property will be benefited by a particular improvement resulting from a special assessment should not be limited to present use of the property, but should extend to potential use, including use rendered more feasible by the improvement.*

*Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier* (by *Joseph F. Galvin* and *Robert J. Sandler*) for the petitioners.

*Lampert, Fried & Levitt, P.C.* (by *David M. Fried* and *Dennis Watson*), for the respondent.

WILLIAMS, C.J. The issue in this case is whether the Tax Tribunal was correct in upholding a special assessment which allocated a cost of $13,236.81 per acre to the Novi land and $38,769.11 per acre to the Dixon Road land. The Tax Tribunal found that, if there were no zoning change, there would be no increase in the value of either property as a result of the assessment and that, even if there were a zoning change, the value of the land would increase by only $5,000 per acre for the Novi land and $15,000 per acre for the Dixon land. We hold that, while the factual findings of the tribunal are supported by competent, material, and substantial evidence, because of the large disproportionality between the cost and the benefit, as a matter of law, we cannot uphold the special assessment.

FACTS

The Dixon Road Group and Novi-Twelve Associates are limited partnerships which own land in the City of Novi. The parcels are located on

Twelve Mile Road, one-half mile west of the inter-
section of Twelve Mile and Novi Roads.

The properties are currently zoned R-1-F, Small
Farm Agricultural Residential District. An area
development plan adopted by Novi in 1978 desig-
nated the northerly portion of the Dixon Road
parcel and the Novi parcel for PD-2 development
and the southerly portion of the Dixon Road par-
cel for PD-3 development.[1] The PD-2 option is

[1] According to the Tax Tribunal:

[W]hen application for development under either option re-
quires rezoning the land, an application to rezone shall be
made to the planning board for review and recommendation to
the city council. The application must be accompanied by a
mapped property area survey of the area for which the rezon-
ing request is being made, proof of ownership of the land or an
option to purchase, a written report assessing the impact the
proposed rezoning and development will have on the site and a
preliminary site plan of sufficient detail to comply with the site
plan review requirements set out in Respondent's Site Plan
Review Procedures Manual.

The planning board may recommend approval of the request
to rezone only when it finds that the parcel for which rezoning
is requested lies substantially within an area of Respondent's
Regional Center Plan designated for development under a PD
option, the option requested corresponds closely with the area
of the Regional Center Plan intended for development under
the PD option, the request is made with intent to develop
under the PD option permitted, the area for which rezoning is
requested is immediately adjacent to like or similar zoning and
does not create unrelated penetrations of nonresidential dis-
tricts in a residentially zoned area and that the area for which
rezoning is requested is either fully served by public utilities,
including water and sanitary sewers, or will be fully served
through the extension of such public utilities to the site at the
time of development.

If the request for rezoning is granted by the council, the
preliminary site plan must then be submitted to the planning
board for review. The planning board reviews the preliminary
site plan and makes a recommendation to the city council
relative to the site plan's meeting the intent and requirements
of the Center Area Development Plan.

The final site plan must also be submitted to the planning
board, which reviews it and makes recommendations to the city
council. The council must find, before it gives its approval, that
among other things, dedication of public rights-of-way shall
have been made, marginal access road easements have been
provided and any direct access points to major thorofares [sic]

intended to permit limited mid- and high-rise development. The PD-3 option is intended to encourage intensive major nonresidential use of the land.

In 1981, the city determined that road improvements, water mains, and storm sewers were necessary for the area and created a special assessment district for each improvement. The total cost of these special assessments is $264,736.16 or $13,236.81 per acre for the Novi land and $765,302.33 or $38,769.11 per acre for the Dixon Road land.

Petitioners argue: 1) that the assessments are invalid because the cost of the improvements exceed the increase in value of the property and 2) that there is no special benefit conferred upon the property beyond that to the community as a whole.

The hearing officer at the Tax Tribunal found that the benefit conferred upon the properties was disproportionate to the costs allocated and therefore vacated the special assessments. The Tax Tribunal adopted most of the findings of the hearing officer, but deleted the findings on increased value. The tribunal did not adopt any specific finding of its own, but found that the land was specially benefited as a result of the improvements. The Court of Appeals affirmed the opinion of the Tax Tribunal in an opinion released on December 26, 1984. This Court then remanded the case to the Tax Tribunal with directions to

> make specific findings on *any* benefits conferred on the petitioners' properties, including any increase in valuation after the proposed improvements, if

---

will be temporary access points. Money or other forms of credit satisfactory to the council must be submitted for the ultimate removal of direct access points to major thorofares [sic], guaranteeing the construction of the marginal access road.

any, 1) if the zoning is not changed, and 2) if the
zoning is changed to planned development or some
other use. [422 Mich 858 (1985). Emphasis added.]

In a response dated May 28, 1985, the tribunal
found:

1. If the subject properties are not rezoned, the
special assessment improvements will not increase
the true cash value of the subject properties. This
finding is consistent with the proposed judgment of
the hearing officer, and based upon the reasons
stated therein.

2. If the subject properties are ultimately re-
zoned and can then be developed for use as permit-
ted by the PD options, then the increase in value
to the subject properties owing to the improve-
ments would be $5,000/acre for the Novi Twelve
parcels (010 and 011); and $15,000/acre for the 001
parcel. This finding is also consistent with the
proposed judgment of the hearing officer, and for
the reasons expressed therein.

I. FACTUAL FINDINGS MADE BY THE TAX TRIBUNAL ON
REMAND ARE SUPPORTED BY COMPETENT, MATERIAL,
AND SUBSTANTIAL EVIDENCE ON THE RECORD

On remand, the Tax Tribunal stated that the
benefits which accrued to the property, assuming
rezoning, were $5,000 per acre for the Novi land
and $15,000 per acre for the Dixon land. These
factual findings were said to be "consistent with
the proposed judgment of the hearing officer, and
based upon the reasons expressed therein." The
figures adopted were taken from the testimony of
appraiser McDonnell.

The primary approach used by McDonnell in
evaluating the properties both before and after the

improvements involved a "comparison of proper-
ties recently sold in the area to the subject prop-
erty, and adjust[ment] for location, physical differ-
ences and lot size . . . ." As a result of this mar-
ket data approach, McDonnell arrived at a price of
$55,000 per acre for the improved Dixon Road
property.

As a further justification for this figure, he
stated that on the basis of projections for future
office space in the area and considering other more
desirable properties available, the Dixon Road
property would not be in demand for office space
for about four years. He stated that "it just seems
to me that office use is really, very, very, specula-
tive for this area . . . ." He therefore took the
price at which nearby small parcels of land were
currently being sold for *immediate* office construc-
tion and discounted that price to reflect his belief
that it would be a number of years before there
would be a buyer willing to pay the going rate for
either the Dixon Road or the Novi-Twelve land.
The result of these calculations is a price very
close to his original market data estimate as indi-
cated in the last paragraph.[2] Because the estimate

---

[2] This discounting is reproduced below from the Appraisal Report
for the Novi-Twelve land:

It is this appraiser's opinion that a minimum of 5 to 8 years
is required to develop this property as the present proposed
zoning indicates. Assuming an average of 5 years at an interest
rate of 13%, the factor is 0.542760. This factor obtained from
the present worth of one table.

A review of the smaller land sales in this immediate area it
is this appraiser's opinion that a new selling price of $85,000.00
per acre for small parcels is justified. This is the price after
marketing expenses, overhead, and engineering costs are elimi-
nated.

Therefore:

$$\$85,000.00 \times 0.54134 = \$ 46,135.00$$
$$\text{rounded} = \$ 46,000.00 \text{ per acre}$$
$$20.0 \times \$46,000.00 = \$920,000.00$$

of value adopted by the Tax Tribunal on remand is
supported by competent, material, and substantial
evidence on the record, Const 1963, art 6, § 2, we
uphold these factual findings.[3]

## II. SPECIAL BENEFITS MUST BE REFLECTED BY AN INCREASE IN MARKET VALUE

The hearing officer, the Tax Tribunal in its
original opinion, and the Court of Appeals all
assumed that a special assessment could be sup-
ported by a showing which did not necessarily
include an increase in the market value of the
assessed property. We disagree. As Cooley stated:

> It has been said that, in assessing benefits, the
> only safe and practicable course, and the one
> which will do equal justice to all parties, is to
> consider what will be the influence of the proposed
> improvement on the market value of the property;
> what the property is now fairly worth in the
> market, and what will be its value when the
> improvement is made. [2 Cooley, Taxation (3d ed),
> ch XX, p 1254.]

Other authorities support this position.

_____

[3] We disagree with the contention of the dissent that the appraiser
considered only *current use* in evaluating the properties. He testified
as follows:

> Well, in our terminology, we *call highest and best use the
> highest use to which the property can be put within a reason-
> able time* and maybe I better read that. *"Highest and best use
> has been defined as that use which will produce the greatest
> net return to the land and/or the property over a reasonable
> period of time."*
>
>                          *  *  *
>
> *It was my opinion at the date of the appraisal that the
> highest and best use would be, under the PD-2 Option, which
> calls for mid-rise high-rise office uses;* [however], I say that
> because of the distance from aid to developments, the economic
> climate, that development would probably be, at least 4 to 8
> years from the date of the appraisal. [Emphasis added.]

Undoubtedly, the simplest, fairest and most just rule, and one that best conforms to the underlying theory of the local assessment, is that the existence and amount of special benefits is to be determined by the effect of the improvement upon the market value of the property which it is claimed is benefited by such improvement. If the construction of such improvement increases the market value of such property, such property receives a benefit and the amount of such benefit is measured by the amount of such increase. [Page & Jones, Taxation by Local and Special Assessment, vol II, § 653, p 1114.]

The benefit by reason of which a special assessment is authorized to be imposed must be understood to be a pecuniary benefit resulting from the increased market value of the land, and if the use of the land imposed by law is such that it can have no market value, an assessment cannot be levied. [70 Am Jur 2d, Special or Local Assessments, § 18, p 859.]

Subject to some exceptions, the general rule is well settled that the benefits which property will derive from a local improvement and for which it may be assessed should be determined by the difference in the market value of the property before and after the making of the improvement. [63 CJS, Municipal Corporations, § 1372, p 1130.]

In holding that special benefits did not need to be reflected by an increase in market value, the tribunal and the Court of Appeals relied on a Court of Appeals decision which stated that

[a] special benefit may be found from an increase in value, relief from a burden or in the creation of a special adaptability in the land. [*Soncoff v Inkster,* 22 Mich App 358, 361; 177 NW2d 343 (1970).]

The language of this case derives from 63 CJS, Municipal Corporations, § 1371, p 1128 and the complete sentence reads:

> Property is specially benefited within the meaning of the law governing special assessments where the *improvement would increase the value of the land, relieve it from a burden, or make it specially adaptable to a purpose which enhances its value,* and where the assessment is fair, having regard to the value of realty benefited, and is proportioned to the property assessed, the assessment will be deemed proper. [Emphasis added.]

We do not agree with the Court of Appeals that the emphasized portions suggest that there are three *alternative* methods of calculating benefits.

The first phrase, "would increase the value of the land" clearly reflects the increase in market value which we believe to be the appropriate basis for determining special benefits. The third phrase, when read in its entirety, also refers to the increase in value resulting from the special adaptability of the land. It clearly does not anticipate that a finding of a special adaptability *without a corresponding increase in value* would support a finding of a special benefit. The four cases cited in support of the second phrase, "relieve it from a burden" do not support the proposition that the relief of a burden without an increase in value can be used to support a finding of a special benefit. Two of these cases explicitly require a finding that the *value* of the property be increased by the improvement.[4] A third states that in order "to sustain a special assessment it must appear that a benefit has been occasioned to the premises as-

[4] *In re Public Service Electric & Gas Co,* 18 NJ Super 357, 364; 87 A2d 344 (1952) ("In determining whether property has been benefited, the question is whether the *market value* of the property has been increased by the improvement and it is not confined to benefits conferred for the particular use it is being devoted to at the time"); *Gabriel v Borough of Paramus,* 45 NJ 381, 384; 212 A2d 550 (1965) ("The foundation of the power to levy a special assessment is the *benefit or enhancement of value* which the improvement confers"). (Emphasis added.)

sessed at least equal to the burden imposed."
*Satter v Littleton,* 185 Colo 90, 97; 522 P2d 95
(1974). Only the oldest case even arguably supports
the proposition that the relief of a burden on the
land which is not reflected in an increase in its
value is a special benefit. However, in that case
the court was only considering whether a cemetery
derived any benefit from the installation of sewers.
*Mullins v Mt St Mary's Cemetery Ass'n,* 268 Mo
691; 187 SW 1169 (1916). The idea that either the
relief of a burden on the land or a special adapta-
bility without an increase in the market value can
justify a special assessment is at odds with the
entire concept of market value which necessarily
includes such improvements.

We believe that a determination of the increased
market value of a piece of property after the
improvement is necessary in order to determine
whether or not the benefits derived from the spe-
cial assessment are proportional to the cost in-
curred.

### III. PROPORTIONALITY BETWEEN THE AMOUNT OF THE SPECIAL ASSESSMENT AND THE BENEFITS RECEIVED

There is general agreement that there must be
some proportionality between the amount of the
special assessment and the benefits derived there-
from. Although various formulations of this rela-
tionship have been stated,[5] the concept of propor-

[5] See, e.g., *Page & Jones, supra,* § 665, p 1139 ("It is well settled
that, in theory, at least, local assessments based on the theory of
benefit must be limited to the amount of the special benefit conferred
by the improvement for which the assessment is levied, and must be
apportioned upon the property assessed *in substantial proportion* to
the amount of the benefit thus conferred"). (Emphasis added.) See also
Cooley, *supra,* pp 1255-1260 ("There can be no justification for any
proceeding which charges the land with an assessment greater than
the benefits; it is a plain case of appropriating private property to
public uses without compensation); 70 Am Jur 2d, § 22 ("It has been

tionality is not new in Michigan. In *Fluckey v Plymouth,* 358 Mich 447; 100 NW2d 486 (1960), this Court found that no benefits accrued to the property as a result of the special assessment, but the Court also stated that the amount of the property increased in value as a result of the expenditure had to be at least equal to the amount of the assessment. 358 Mich 453. See also *German Lutheran Church Society v Mt Clemens,* 179 Mich 35, 40; 146 NW 287 (1914). ("There can be no justification for any proceeding which charges the land with an assessment greater than the benefits.") In another case we stated that there must be reasonable proportionality between the amount of the assessment and the value of the benefits. See *St Joseph Twp v Municipal Finance Comm,* 351 Mich 524, 533; 88 NW2d 543 (1958). ("It is an essential of a special assessment that the improvement concerned should be of value to the property assessed in *reasonable relationship* to the assessment . . . .") (Emphasis added.) See also *Crampton v Royal Oak,* 362 Mich 503, 520; 108 NW2d 16 (1961). ("This court . . . accepted the view that an assessment must be levied in proportion to benefits.") We have also suggested that we would not invalidate a special assessment unless there was a "substantial excess" between the cost of an improvement and the benefits accruing to the land as a result. *Blades v Genesee Co Drain Dist No 2,* 375 Mich 683, 695; 135 NW2d 420 (1965).

While we certainly do not believe that we should require a rigid dollar-for-dollar balance between the amount of the special assessment and the

variously stated that in order to sustain the validity of a special or local assessment, the benefit to the property assessed must be substantial, equivalent to the amount of the assessment, not exceeded— or at least not substantially exceeded—by the assessment").

amount of the benefit, a failure by this Court to require a reasonable relationship between the two would be akin to the taking of property without due process of law. Such a result would defy reason and justice. Therefore, we conclude that while decisions made by municipalities with respect to special assessments generally should be upheld, this Court will intervene where there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements. In this case, the cost of the improvements is approximately 2.6 times the increase in value of the properties and for that reason we hold the special assessment invalid.

LEVIN, CAVANAGH, and ARCHER, JJ., concurred with WILLIAMS, C.J.

BOYLE, J. Petitioners began the present action on March 24, 1981, seeking to invalidate the creation of certain special assessment districts in the City of Novi. Petitioners are landowners in the assessment districts which cover an area across from Twelve Oaks Mall, one-half mile west of Novi Road and in between Twelve Mile Road and the I-96 expressway.

The land is currently zoned for large lot, low density, single family dwellings. In anticipation of further development after the construction of Twelve Oaks Mall, the Novi City Council amended its zoning ordinance to create planned development options for multiple, commercial, and office development in the area at issue.[1] The city later

---

[1] According to the findings of the Tax Tribunal, the northerly portion of the Dixon Road Group parcel was designated for use under the PD-2 option while the southerly portion was designated for use under the PD-3 option. The Novi-Twelve Associates parcels were designated for use under the PD-2 option. Section 1906 of the zoning

determined that a new road system, water main, and storm drainage improvements were necessary and created special assessment districts to defray the costs of the improvements. The properties were then assessed according to the special benefits to be derived.

The parcel owned by petitioner Dixon Road Group was assessed a total cost of $765,302.33, or $38,769.11 per acre. The parcels owned by petitioner Novi-Twelve Associates were assessed a total cost of $264,736.16, or $13,236.81 per acre. Petitioners sought to vacate the assessments, contending that they were invalid because 1) the improvements did not confer a special benefit on

ordinance provides that the PD-2 planned development option would permit the limited application of mid- and high-rise, higher intensity office uses in a district otherwise restricted to low-rise, lower intensity office uses. Section 1907 states that the PD-3 planned development option would allow the development of intensive major nonresidential land use types not otherwise permitted in the district, including convention and commercial centers, freestanding retail outlets, banquet halls, restaurants of the non-fast-food type, and the office commercial uses permitted in the PD-2 areas.

When application for development under either option requires rezoning, an application to rezone must be made to the city's planning board for review and recommendation to the city council. The application must comply with the requirements of the city's Site Plan Review Procedures Manual.

The planning board may recommend approval of the request for rezoning when it finds that the rezoning is consistent with the city's master regional center plan, the rezoning will not cause unrelated penetrations of nonresidential districts in a residentially zoned area, and the area requested to be rezoned is either fully served by public utilities, including water and sanitary sewers, or will be fully served through the extension of such public utilities to the site at the time of development.

If the request for rezoning is granted by the council, both the preliminary and final site plans must then be submitted to the planning board which reviews them and makes recommendations to the city council. Before the council gives its approval, it must find, among other things, that dedication of public rights-of-way and marginal access road easements have been provided and that any direct access points to major thoroughfares will be temporary access points. Money or other terms of credit satisfactory to the council must be submitted for the ultimate removal of the direct access points thereby guaranteeing the construction of the marginal access road.

the properties beyond that conferred upon the community as a whole, 2) the allocations of cost were unreasonable and out of proportion to any benefits derived from the improvements, and 3) the special assessment districts were not created pursuant to the local ordinance and statutes.

The hearing officer at the Michigan Tax Tribunal agreed with petitioners and in her proposed opinion and judgment declared the special assessments invalid. While adopting the bulk of the facts found by the hearing officer, the Tax Tribunal refused to accept the hearing officer's ultimate conclusion and corresponding factual support and affirmed the special assessments. The Court of Appeals upheld the decision of the Tax Tribunal.

Pursuant to petitioners' application for leave to appeal, this Court remanded this cause to the Tax Tribunal to make specific findings on the benefits conferred on petitioners' properties, including increase in valuation after the proposed improvements, if any, under the following alternative hypotheses: a) if the zoning were not changed, and b) if the zoning were changed to planned development or some other use. On remand, the Tax Tribunal simply adopted findings consistent with the findings of the hearing officer as to these questions.[2] This Court then granted petitioners leave to appeal.

I

"A special assessment is in the nature of a tax upon property levied according to benefits conferred on the property." *Cooper, Wells & Co v City of St Joseph,* 232 Mich 255, 260; 205 NW 86 (1925)

[2] See n 7.

(quoting 1 Cooley, Taxation [4th ed], p 105).[3] The theory sustaining special assessments is that the

---

[3] Taxes are distinguished from special assessments in that "[t]axes are the enforced proportional contributions from persons and property, levied by the State by virtue of its sovereignty for the support of government and for all public needs." *Cooper, Wells & Co, supra,* quoting 1 Cooley, Taxation (4th ed), p 260. This Court, in *Cooper,* also quoted with approval the following language from *Town of Macon v Patty,* 57 Miss 378; 34 Am Rep 451 (1879), which further explained the differences between a tax and special assessment:

> A local assessment can only be levied on land; it cannot, as a tax can, be made a personal liability of the taxpayer; it is an assessment on the thing supposed to be benefited. A tax is levied on the whole State, or a known political subdivision, as a county or town. A local assessment is levied on property situated in a district created for the express purpose of the levy, and possessing no other function, or even existence, than to be the thing on which the levy is made. A tax is a continuing burden, and must be collected at stated short intervals for all time, and without it government cannot exist; a local assessment is exceptional both as to time and locality,—it is brought into being for a particular occasion, and to accomplish a particular purpose, and dies with the passing of the occasion and the accomplishment of the purpose. A tax is levied, collected, and administered by a public agency, elected by and responsible to the community upon which it is imposed; a local assessment is made by an authority *ab extra.* Yet it is like a tax, in that it is imposed under an authority derived from the legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed for the collection of taxes. It is like a tax, in that it must be levied for a public purpose, and must be apportioned by some reasonable rule, among those upon whose property it is levied. It is unlike a tax, in that the proceeds of the assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived must enure to the property upon which it is imposed, or else the courts will interfere to prevent its enforcement. [232 Mich 261.]

Because of these distinctions, a special assessment is not considered a "tax" within the constitutional provision providing for limitations on property tax, Const 1963, art 9, § 6, see *Graham v Saginaw,* 317 Mich 427; 27 NW2d 42 (1947); nor is it subject to the constitutional requirement of uniformity of taxation, Const 1963, art 9, § 3. See *Detroit v Weil,* 180 Mich 593; 147 NW 550 (1914); *Loomis v Rogers,* 197 Mich 265; 163 NW 1018 (1917). However, in Michigan, "when a public burden by way of special assessment is laid, it must be laid under some uniform plan" because of the requirements of equal protection and due process of the laws. *Auditor General v Konwinski,* 244 Mich 384, 386; 221 NW 125 (1928).

party assessed is locally and peculiarly benefited, to the extent of the assessment, over and above the ordinary benefit which one of the community receives from the public improvement.[4] *Kuick v Grand Rapids,* 200 Mich 582, 588; 166 NW 979 (1918). A special benefit may be found from an increase in value, relief from a burden, or in the creation of a special adaptability in the land.[5] *Soncoff v Inkster,* 22 Mich App 358, 361; 177 NW2d 243 (1970), citing 63 CJS, Municipal Corporations, § 1371, p 1128. In determining whether a special benefit exists, the inquiry is not limited to

---

[4] The assessment cannot exceed the benefit to be derived from the improvement, for the reason that the only principle upon which the special assessment can be made at all is that the value of the property is enhanced by the expenditure . . . . [*White v Saginaw,* 67 Mich 33, 40; 34 NW 255 (1887); *Fluckey v Plymouth,* 358 Mich 447, 453-454; 100 NW2d 486 (1960), quoting, 2 Cooley, Taxation (3d ed), pp 1153-1154.]

[5] McQuillin offers examples of improvements to the land which have been found to confer special benefits:

Access is a special benefit. Property may derive a special benefit from the construction of a sewer forming part of a general sewer system. So, the benefit accruing to property by reason of the greater facility with which fire protection can be afforded it, is proper for considering benefits derived from the paving of a street. The improved sanitary condition of surrounding property, made more healthful by the construction of a sewer, may be considered in determining the benefits to a lot from such sewer. If a sewer takes surface water from a lot more speedily than it was removed before, that fact may be considered as a benefit. In opening or extending a street it is proper to consider the benefit accruing to property from fronting on a street that is a thoroughfare. Under a statute creating a corporation to build a railroad passenger station and requiring the extension of streets and widening of one to accommodate the public in the use of the station, benefits accruing to land by reason of the construction of the station by the corporation may be considered, as well as those derived from widening and extending the streets, and such do not invalidate the statute. [14 McQuillin, Municipal Corporations (3d ed), § 38.33, p 126.]

the present use of the property, but also includes the uses rendered more feasible by the completion of the improvements. *Crampton v Royal Oak,* 362 Mich 503, 514-516; 108 NW2d 16 (1961). See also 14 McQuillin, Municipal Corporations (3d ed), § 38.33, p 125.

The creation of a special assessment district through the legislative powers of a municipality enjoys a presumption of validity. *Auditor General v Maier,* 95 Mich 127, 131; 54 NW 640 (1893); *Crampton, supra.* Whether there is any benefit at all, or the amount of the benefit, is a decision best made by the legislative body imposing the assessment. Courts are reluctant to interfere in this legislative determination where a municipality acts in good faith and has a good reason to believe that benefits will accrue and there is no showing of fraud, mistake, discrimination, or a clear absence of the benefits claimed. *Frischkorn Investment Co v Detroit,* 257 Mich 546, 552-553; 241 NW 903 (1932).

In the case at bar, the Tax Tribunal found that a reasonable basis[6] existed for the city's conclusion that petitioners' properties would be specially benefited by the improvements at issue. In reviewing a decision of the Tax Tribunal, this Court must determine whether the decision is authorized by law and whether the decision is supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

The hearing officer in this case found that the allocated costs to the petitioners for the improve-

---

[6] If a reasonable basis can be shown for the levying of the special assessment, then the presumption that the special assessment is valid has not been overcome. See *Powers v Grand Rapids,* 98 Mich 393; 57 NW 250 (1894); *Graham v Grand Rapids,* 179 Mich 378; 146 NW 248 (1914); *Fluckey v Plymouth,* n 4 *supra.* See, generally, Comment, *Special assessments for road improvement projects in Michigan— What standard of trial court review?,* 20 Wayne L R 1073 (1974).

ments were approximately 2.6 times the increase in value that the improvements would confer upon the parcels assessed.[7] The hearing officer then vacated the assessments, concluding that the assessments were both unreasonable and out of proportion to the benefits conferred. *Axtell v City of Portage,* 32 Mich App 491, 497; 189 NW2d 99 (1971). The Tax Tribunal refused to adopt the hearing officer's conclusion. The petitioners claim this was error. We disagree because the hearing officer's finding on increase in value was based on considerations which are contrary to law.

### A

Special assessments for improvements like the ones at issue must be based on the special benefits to the land assessed. Contrary to petitioners' contention and the assertion of the majority, however, a finding of special benefit is not limited to a measurable increase in value equal to or more than the sum they are required to pay.[8] This Court

---

[7] The hearing officer, apparently accepting the appraisal submitted by petitioners' expert, found that the true cash value of the Novi-Twelve parcels was $35,000 per acre before the improvements and $40,000 per acre after the improvements. For the Dixon Road Group parcel, the hearing officer found the true cash value to be $40,000 per acre before the improvements and $55,000 after the improvements. As stated earlier in this opinion, the cost of the improvements was $13,236.81 per acre for the Novi-Twelve parcels and $38,769.11 per acre for the Dixon Road Group parcel, or roughly 2.6 times the increase in value found by the hearing officer to be conferred on the parcels by the improvements.

[8] Petitioners cite *Fluckey v Plymouth,* n 4 *supra,* in support of their proposition. *Fluckey* does not support petitioners' contention.

In *Fluckey,* this Court struck down a special assessment for the widening of a two-lane road to a four-lane road. In doing so, the lack of enhancement in value of the residential property was only one factor considered by the *Fluckey* Court. The *Fluckey* Court also considered whether there were unquantified benefits conferred upon the property assessed which were different from those conferred upon the community as a whole. Because the alleged special benefits to be conferred by the improvements were de minimis in light of the

has never held that the measure of a special
benefit is limited to the enhanced value of the
property after it is improved. Actual and exact
monetary benefit is incapable of precise quantifica-
tion.[9] Indeed, such a rule is totally unworkable
where there has been a general depression in the
market value of real estate. See 63 CJS, Municipal
Corporations, § 1372, p 1130.

The existence and extent of a special benefit
may be determined, therefore, by considering also
whether the improvements result in the relief of
existing burdens or the creation of a special adapt-
ability in the land.[10] These are considerations

---

detriment that would be suffered in the depreciated value of the
property, the *Fluckey* Court was constrained to find that no special
benefit would accrue to the property as a result of the improvements.
*Fluckey* does not hold, as petitioners contend, that a quantified
increase in value is a prerequisite to the validity of a special assess-
ment.

We also find the case at bar distinguishable from the facts in
*Fluckey.* In this case, the existence and nature of the special benefits
as well as an increase in value because of the improvements has been
established. While the amount of the increase is disputed, what has
not been established, as was in *Fluckey,* is a detriment other than
that to the pocketbooks of the assessed property owner. It has not
been established in this case that the property itself will be detrimen-
tally affected by the improvements.

[9] It is true that special assessments for a public improvement,
such as a drain, must be based on the special benefits to the
land assessed therefor. Cross-appellants claim that such bene-
fits must be measured by the enhanced value of the land due to
the drain as determined many years after the drain was
constructed. This is not correct. Drains are not only for the
purpose of improving the land, but are also for improving the
sanitation and health of the residents and municipalities of the
entire district. The exact and actual monetary benefit to any
individual parcel of land would be difficult to measure and at
most can only be estimated with a fair degree of exactness.
[*Oakland Co Drain Comm'r v Royal Oak,* 325 Mich 298, 313; 38
NW2d 413 (1949), cert den 338 US 890 (1949). See also *Foren v
Royal Oak,* 342 Mich 451, 456; 70 NW2d 692 (1955).]

[10] [T]he word "benefit" does not mean simply an increase in
market value, but embraces both actual increase in money

which embrace the actual and potential uses of the land as a result of the improvements and normally go hand in hand with an enhancement of value. So long as the value of the land is not diminished by the improvements and the relief of a burden or creation of a special adaptability in the land is clearly ascertainable, it cannot be said that the finding of a benefit to those specially assessed is without a reasonable basis. See *Fluckey v Plymouth,* 358 Mich 447, 453; 100 NW2d 486 (1960); *Oakland Co Drain Comm'r v Royal Oak,* 325 Mich 298; 38 NW2d 413 (1949).

The majority holds that "a determination of the increased market value of a piece of property after the improvement is necessary in order to determine whether or not the benefits derived from the special assessment are proportional to the cost incurred." (*Ante,* p 401.) It appears from this holding that the essential thrust of the majority opinion is that an increase in value established by an appraisal is a prerequisite to the validity of a special assessment. Such a holding is clearly wrong.

A municipality's determination of the existence and extent of special benefits is presumed valid. It is well-established that this determination may be based upon an increase in value, relief of burdens to the land, or the creation of special adaptabilities in the land which enhance the land's value. While we agree that an increase in value established by an appraisal is appropriate evidence, we note that a paper valuation of each property to be assessed has never been a prerequisite to the proper initial apportionment of a special assessment. Our disagreement with the majority concerns its apparent

value and actual or added use and enjoyment of the property.
[63 CJS, Municipal Corporations, § 1372, p 1131.]

holding that a finding of special benefits must be supported by an appraisal reflecting market value. In our view, such evidence is appropriate, but not a necessity to justify a special assessment, unless the presumption of validity has been legitimately overcome.

Indeed, as early as 1892, this Court rejected increase in value as the only method of apportioning the costs of improvements because such valuations do not approach uniformity. *Grand Rapids School Furniture Co v Grand Rapids*, 92 Mich 564, 569; 52 NW 1028 (1892).[11] Further, this Court has long accepted the front-footage method for measuring the costs of assessments. *Auditor General v Konwinski*, 244 Mich 384; 221 NW 125 (1928); *Foren v Royal Oak*, 342 Mich 451; 70 NW2d 692 (1955).[12] McQuillin also recognizes that "[t]he prohibition is that special taxes or local assessments shall not be levied in excess of the benefits conferred, *whether by the valuation, front foot, area, or any other method.*" 14 McQuillin, Municipal Corporations (3d ed), § 38.02, p 20. (Emphasis added.)

The majority also believes that "[t]he idea that either the relief of a burden on the land or a special adaptability without an increase in the market value can justify a special assessment is at odds with the entire concept of market value which necessarily includes such improvements."

---

[11] A simple illustration bears this point out. Assume that two properties front upon a dirt road which is later determined to be in need of paving. One property is already improved with a building while the other is not. If the assessments for the paving are apportioned according to valuation, it may well be that the improved property will be assessed a greater proportion than the unimproved property because the paving increases its value more than the unimproved property. Yet the advantages to both properties are clearly the same. See also *Grand Rapids School Furniture Co, supra*, pp 569-570.

[12] The theory sustaining this method is that it treats all abutting owners alike and results in an equitable distribution of the burden. *Auditor General, supra.*

We have never intimated a contrary position. Indeed, we agree with this statement. We further submit that an increase in value without correlative concrete advantages in the land resulting from the improvements smacks of pure sophistry and is fundamentally suspect.

There is no guarantee that assessments based on valuation will be uniformly upheld. See *St Joseph Twp v Municipal Finance Comm,* 351 Mich 524, 533; 88 NW2d 543 (1958). As pointed out by this Court in *Grand Rapids School Furniture Co, supra,* pp 570-571:

> Is there any practical difference between a finding that the several owners of property within a given district have been benefited in a given amount, and a finding that the same property has been increased in value to that amount? The only difference is that in the one case the finding is the basis of the assessment, and in the other it is itself the assessment. In the one case the finding concludes the assessment, and in the other a percentage is to be calculated based upon the finding. Each finding is a valuation of benefits. But are they not both equally open to the same objections? Is not the valuation in each case equally arbitrary? The adjustment of percentages is purely a question of mathematics, and courts are rarely troubled with mistakes in figures. It is the valuation that the tax-payer objects to. Does it make any difference whether the amount assessed is denominated "increased value" or "benefits?" Is not this Court as well informed as to this assessment as though the amount assessed were a percentage of a larger amount? The question does not involve the taking of private property for public uses, but is simply the exercise of the inherent right of taxation. The power of taxation implies apportionment, and, when that power has been exercised, courts will not assume to declare it void unless the invasion of private rights is flagrant and its demonstration clear. [Emphasis added.]

The holding of the majority increases the risk that the method of apportionment will not achieve uniformity and will not ensure that assessments will be validly laid in the future.

We believe the majority has confused the theory of special benefits with the applicable standard of review. The theory of special benefits is that the land to be assessed must be specially benefited by the improvements above those benefits enjoyed by the public at large and that the exactions for the improvements must not exceed the benefits. *Kuick v Grand Rapids, supra.* Review of a special assessment, on the other hand, begins with a presumption of validity in the determination of benefits by the municipality. As explained in McQuillin, *supra,* pp 19-20 and quoted by this Court in *St Joseph Twp, supra,* pp 533-534:

> It would seem that the legislature is competent to judge of benefits. This is assumed by the current of authority. A public improvement having been made, the question of determining the area benefited by such improvement is generally held to be a legislative function, and such legislative determination, unless palpably unjust, is usually conclusive, and not subject to judicial interference unless arbitrariness, abuse or unreasonableness be shown.

The holding of the majority seems to be that the presumption of validity does not attach where the determination of benefits is challenged by an appraisal indicating an increase in value which differs from the municipality's determination. It therefore appears to require that the reviewing tribunal make a de novo determination as to the existence and extent of special benefits and substitute its judgment for that of the municipality. The majority would therefore replace the established standard of review with a new standard of review

that destroys the presumption of validity. Compare *Foren v Royal Oak, supra; Frischkorn, supra,* 553; *Fluckey, supra,* 454.

We adhere to the standard of review firmly established by more than a century of jurisprudence in Michigan. Under this standard, we do not believe that the petitioners in this case have rebutted the presumption of validity. In the case at bar, the Tax Tribunal found that the assessed parcels would increase in value. The amount of the increase was widely disputed. The figures adopted by the Tax Tribunal on remand as barometers of the increase in value are the same figures originally proposed by the hearing officer. The findings of the Tax Tribunal on remand are inconsistent with its original opinion.

In its original opinion the Tax Tribunal held in pertinent part:

> According to *Crampton, supra,* the court must consider potential uses of the property made more feasible by the improvements as well as actual uses to determine if a special benefit exists. From the proofs submitted, there exists a strong possibility that the area could be rezoned in accordance with the master plan, to allow commercial development in the future. Thus, the proposed improvements would greatly aid Petitioners in developing the land. But even if the property is not rezoned, Petitioners would not be able to develop the property for residential use without these improvements. Further, both parties' appraisers found that the improvements would result in an increase in value, although they substantially disagreed as to how much of an increase.
>
> As set forth in *Soncoff, supra,* the three criteria for establishing the existence of a special benefit to the property are an increase in value, a relief from an existing burden, or the creation of a special adaptability in the land. In this cause the proper-

ties are increased in value by the improvements and existing burdens on the property are relieved so as to create a special adaptability in the land for profit, i.e., development either under the existing zoning or under rezoning if obtained in the future.

This passage seems to state that an increase in value will inure to the land because of the improvements even if the land is not rezoned. On remand, however, the Tax Tribunal stated that no increase in value would occur in the absence of rezoning.

While this inconsistency is inexplicable and therefore troubling, it is not fatal to the decision of the Tax Tribunal upholding the special assessments. It is the future and best use of the land which is to be considered in evaluating benefits. In this case, it is not disputed that the highest and best use of the land at issue includes those uses made possible by rezoning. Therefore, the finding on increase in value after rezoning may be considered in reviewing whether the assessment was laid by arbitrary, capricious or unreasonable means if it properly takes into consideration the highest and best use of the property. In this case the finding did not. In fact, it appears that the appraisal upon which the Tax Tribunal based its finding was limited to an estimation of market value based on the land's current use.

Increase in market value based on current use is a standard too inflexible to determine whether a special benefit accrues to an affected property.[13] Indeed, the settled law in Michigan is:

> [I]n determining whether property is benefited by a particular improvement the inquiry is not

_____

[13] See *Hawley v Hot Springs,* 276 NW2d 704, 706 (SD, 1979).

limited to the present use of the property but, rather, to uses to which it may be put, including such as may be rendered more feasible by the carrying out of the project in connection with which the assessment is levied. [*Crampton v Royal Oak, supra,* 517.][14]

The appraisal which was the basis of the Tax Tribunal's findings on increase in value was made pursuant to the market data approach to estimating market value. According to the appraisal, this approach involves "the comparison of properties recently sold in the area to the subject property, and adjusting for location, physical differences and lot size between the properties to indicate value."

The appraisal was calculated twice using two different sets of comparables. The first set of comparables consisted of similar-type land sales in-

---

[14] In *Hawley v Hot Springs,* n 13 *supra,* 706, the South Dakota Supreme Court noted that market value increase based on current use has been rejected by the Michigan courts:

The method by which the amount of a special benefit to a piece of property is determined varies among the several states. Minnesota has apparently adopted the rule that the value of special benefits is found by determining what increase, if any, there has been in the market value of the benefited land. *In re Village of New Brighton Resolution 862,* 293 Minn 356, 199 NW2d 435 [1972]. The difficulty with rigidly applying this rule is that a search for increased market value resulting from the special benefit tends to examine the property's increased value in terms of the current use of the property. The better rule looks to the benefits accruing to the property in light of highest and best future use of the property that can reasonably be expected. *Goodell v City of Clinton,* Iowa, 193 NW2d 91 [1971]. See also 63 CJS Municipal Corporations § 1372b. Accordingly, the strict market value increase rule has been rejected in a number of jurisdictions. See, e.g., *Chicago, RI & P Ry Co v City of Centerville,* 172 Iowa 444, 153 NW 106 [1915]; *Foren v City of Royal Oak,* 342 Mich 451, 70 NW2d 692 [1955]; *Beh v City of West Des Moines,* 257 Iowa 211, 131 NW2d 488 [1965]; *Soo Line Railroad Co v City of Wilton, ND,* 172 NW2d 74 [1969]; *Davis v City of Westland,* 45 Mich App 497, 206 NW2d 750 [1973]; *Buehler v City of Mandan, ND,* 239 NW2d 522 [1976]; *NEBCO, Inc v Speedlin,* 198 Neb 34, 251 NW2d 710 [1977].

volving similar acreage and land use similar to its current use. The second set of comparables consisted of smaller parcels sold for mid- to high-rise office use. This second comparison resulted in an increase in value substantially greater than that derived under the first comparison. However, this potential price of the land was discounted to current market value to reflect the appraiser's belief that the land could not be developed as the present proposed zoning indicates for five to eight years. It is clear that if this latter value had not been discounted, the increase in value of the land would exceed the cost of the improvements.

The majority disagrees that the appraiser considered only current use in evaluating the properties, notwithstanding that the highest and best future use of the property as improved was discounted to doublecheck a determination of market value *on the basis of current land use* and was thereby *totally* negated in the final determination. Petitioners' appraiser admitted that the reason for the discounting was his opinion that this future use is "really, very, very speculative for this area."

According to McQuillin:

Chances and probabilities of future use, as sufficiently near in time and definite in kind to be of practicable importance, enter into present market value, and so far as they enhance or diminish it, *are to be given full weight. But where they are so remote as to rest chiefly in the imagination, and do not in fact influence the price which customers would be willing to pay in a present sale, they cannot be the basis of a determination of benefit or value.* [14 McQuillin, Municipal Corporations (3d ed), § 38.33.]

I would submit that if such use is so speculative that in all fairness it should be discounted for its

effect on market value, then, in keeping with the teaching of McQuillin, *supra,* it cannot be the basis of a determination of benefit based on enhanced value. Yet neither the petitioners nor the majority argues that this future use for the properties is so remote as to rest chiefly in the imagination. Indeed, it seems that the majority finds the future use an appropriate consideration. I note that the hearing officer who originally formulated the findings on increase in value gave no explanation for rejecting the city's appraisal in favor of petitioners'. She found no fraud or abuse of discretion. Nor is fraud or an abuse of discretion on the city's part manifest to this Court on appeal. Because I am not prepared to state that the city acted unreasonably in considering this future use as a basis for a determination of benefit to the land, it should be given full weight in a determination of market value.

Given that the appraisal relied upon by the Tax Tribunal limited the evaluation of the properties to their current use, we consider the amount of increase in value derived from that appraisal an inappropriate basis for invalidating the special assessments and confine our review to the remaining findings of the Tax Tribunal.[15]

---

[15] Given the fact that we do not consider the finding on the amount of increase in value a competent basis for our review in this case, we do not address the issue of proportionality framed by the parties, that is, whether a special assessment must fail where an increase in fair market value is not equal to or more than the cost of the improvement. We would note, however, that increase in value is a factor which is often subject to conflicting expert testimony. Due to the fluctuating economic climate, an estimated increase in value may either never come to pass or may come to pass many times its current expectation. Therefore, while depreciated value is a clear sign of no special benefit, see *Fluckey v Plymouth, supra,* the same cannot always be said of an increase in value which is less than the cost of the improvements. In the latter case, it seems necessary for a court, in reviewing the validity of a special assessment, to examine the nature of the benefits conferred in terms of relieving existing burdens and creating special uses for the land.

B

In addition to an increase in value, the Tax Tribunal, in its first opinion, found that the proposed improvements would result in relief from existing burdens because the improvements would create internal access to the petitioners' parcels and drainage and water service where none existed before. The tribunal further found a strong possibility that the parcels could be rezoned in accordance with the city's master plan to allow for commercial development. The tribunal thus concluded that the proposed improvements would create a special adaptability in the land for development. It noted that even if the property were not rezoned, the petitioners would not be able to develop the property for residential use without the improvements. The record established that due to the long, narrow shape of the parcels, the southern portions have no direct access to any public right of way. These portions are unreachable and cannot be separately developed. Petitioners' own witness agreed that the improved road system would provide a special benefit to these parcels to the extent that it made separate development of the lower portions possible.

We would hold that these latter findings sustain the city's initial determination that special benefits would accrue to the properties assessed. We cannot ignore the obvious benefits conferred upon petitioners' properties when the finding of benefits is supported by material, competent, and substan-

Moreover, because exact equality of taxation is not always attainable, the excess of cost over increase in value would have to be substantial and of material character before a court should restrain the enforcement of the special assessment. *Norwood v Baker*, 172 US 269; 19 S Ct 187; 43 L Ed 443 (1898); see also *Fluckey v Plymouth, supra.*

tial evidence in the record as a whole.[16] See *Foren v Royal Oak, supra.*

## II

Petitioners also contend that the city did not act properly in creating the special assessment districts. They submit that the city failed to consider and prescribe "what part or proportion of the cost shall be paid by special assessment upon the property especially benefited, [the] determination of benefits received by affected properties, and what part, if any, shall be paid by the City at large." Novi City Ordinance No. 79-1.04, § 7.

The Tax Tribunal found that the city council did give due consideration to this issue and complied with the city ordinance. The record supports the Tax Tribunal's findings.

The record also refutes petitioners' claim that they will not receive benefits from the improvements which are unique from the community as a whole. The instant case is distinguishable from *Stybel Plumbing, Inc v Oak Park,* 40 Mich App 108, 113; 198 NW2d 782 (1972), cited by petitioners in support of their position. In *Stybel,* the Court of Appeals found that while the landowners directly benefited from construction of a service drive and parking lot, the public at large also received the benefit of less traffic on a major thoroughfare. The fact that this benefit was not incidental, but the purpose of the project, caused the Court of Appeals to hold that the public must bear its fair share of the assessment.

In the case at bar, the proposed road system is consistent with the city's regional plan. The record

---

[16] Our review is not limited to the finding of the Tax Tribunal presented to us on remand. Our review of this case must include the Tax Tribunal's original opinion as well.

indicates, however, that it is designed solely as an access road for development west of Novi Road and any effect on current traffic on Novi and Twelve Mile Roads would be nonexistent or incidental. Moreover, the parcels assessed will peculiarly benefit from the water and drainage systems not only because such systems are not existing there now, but also because the risk of failing to secure easements from neighboring lands for the development of alternative privately placed systems is removed.[17] Therefore, petitioners' claim is without merit.

### III

Petitioners' final contention is that the hearing officer's decision should be adopted in toto by this Court because the hearing officer had a firsthand opportunity to view the witnesses and was in the best position to determine credibility and make findings of fact. We cannot accept petitioners' contention. This is not a case which turned upon credibility. Cf. *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974). Nor did the hearing officer extend credibility as one of the reasons for accepting petitioners' appraisal of the property over the city's.

It is sufficient that the Tax Tribunal's decision affirming the city's levy of the special assessment is supported by material, competent, and substantial evidence on the whole record. Const 1963, art 6, § 28. For the foregoing reasons, the Court of Appeals decision affirming the decision of the Tax Tribunal should be affirmed.

---

[17] Petitioners offered evidence establishing that their alternative plan to the special assessment for the water system was to seek easements from neighboring lands for the purpose of connecting to existing systems. Petitioners admitted, however, that there was no guarantee that the easements could be secured.

BRICKLEY and RILEY, JJ., concurred with BOYLE, J.