## SONCOFF *v.* CITY OF INKSTER

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—SPECIAL BENE-
   FITS—PROPERTY.

   Special benefits, which must exist in order to allow special
   assessments, require an increase in value, relief from a burden,
   or the creation of a special adaptability in the land.

2. APPEAL AND ERROR—FINDING OF FACT.

   The Court of Appeals may not upset a finding of fact unless it
   is clearly erroneous (GCR 1963, 517.1).

3. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—SPECIAL BENE-
   FITS—PROPERTY—FINDING OF FACT.

   Finding of fact that special benefits would result to plaintiffs
   from road improvements financed by special assessments was
   not clearly erroneous where there was testimony which could
   act as the basis for that finding (GCR 1963, 517.1).

4. MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENTS — IMPROPER
   METHOD.

   Special assessment rates for road improvements were improperly
   determined where: (1) the reduction of a church assessment
   was not supported by evidence, (2) there was not a uniform
   charge per interior home in different quadrants, (3) the cost
   of intersecting streets and alleys was neither apportioned
   among the city at large nor among all interior residences
   which gained greater access to ingress and egress and, (4)
   the city assessor did not comply with the total assessment
   authorized by the city council.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Special or Local Assessments § 21.
[2] 5 Am Jur 2d, Appeal and Error § 820.
[3] 48 Am Jur, Special or Local Assessments §§ 184, 185.
[4] 48 Am Jur, Special or Local Assessments §§ 60, 144.
   Enforceability, against undivided tract, of tax or special assess-
   ment levied against part of it at one rate and part at another.
   112 ALR 73.

Appeal from Wayne, Edward S. Piggins, J. Submitted Division 1 February 11, 1970, at Detroit. (Docket Nos. 7,121, 7,122, 7,123.) Decided February 27, 1970. Rehearing denied April 7, 1970.

Complaints by Sam Soncoff and others challenging the validity of special improvement assessments made by defendant city and its treasurer. Actions consolidated for trial. Complaints dismissed with prejudice. Plaintiffs appeal. Reversed and remanded.

*Perry & Bahen,* for plaintiffs.

*Albert H. Schlenker, Jr.,* City Attorney, for defendant.

Before: QUINN, P. J., and R. B. BURNS and FITZGERALD, JJ.

FITZGERALD, J. This appeal encompasses three separate lawsuits which were consolidated for trial, decision, and appeal. These actions challenge the validity of certain special assessments made by the defendant city in 1968 to finance improvements on Inkster Road and Cherry Hill Road. The facts, basically agreed upon by the parties, reveal the following:

In determining the assessments along Inkster Road, a total footage was utilized that was the sum of the assessable public and private lands abutting Inkster Road. Excluded from this figure was the footage contained within the intersections of abutting streets and alleys. This excluded amount equalled approximately 10% of the assessed total.

The total footage was divided into the cost and resulted in an assessment of $29.50 per foot for

property fronting on Inkster. Residential property was assessed for the first 40 feet at $18.10 per foot for property siding on Inkster. Certain interior property on the northeast quarter of the Inkster improvement was assessed at the flat rate of $39.68 per house. Finally, a certain church was assessed at $18.10 per front foot instead of $29.50.

The assessment on Cherry Hill Road was made in a similar manner. Again, the width of intersecting roads and alleys was not computed in determining the per foot assessment. The result was an assessment of $36.08 per foot. The residential property siding on Cherry Hill was again subject to a reduced assessment for only the first 40 feet at $18.10 per foot.

Plaintiffs' objections to the local authorities were denied. An injunction was then sought by plaintiffs to prevent the assessments. The parties agreed that the show cause hearing would be a final determination of this matter on the merits.

After hearing testimony on behalf of both sides, the trial court determined that there was a need for the road improvements and that the improvements would result in special benefits which would accrue to the neighboring landowners, including plaintiffs. Therefore, the various assessments were valid.

From this determination plaintiffs present this appeal. Plaintiffs raise three issues. Defendants accept two, but reject the third, which, in actuality, is not properly before us. The viable issues can be stated as follows:

A. Whether the trial court's finding of fact regarding the existence of special benefits was erroneous.

B. Whether the trial court's determination that the assessment variances were valid was erroneous.

On the first issue, plaintiffs argue that the trial court must find that special benefits exist in order to allow special assessments to be made on certain property. *Fluckey* v. *City of Plymouth* (1960), 358 Mich 447. Special benefits require an increase in value, relief from a burden, or the creation of a special adaptability in the land. 63 CJS, Municipal Corporations, § 1371, p 1128. They claim that when these general principles are applied to the instant case, the testimony is inadequate, and that the testimony of the defendants' witnesses failed to establish any special benefits. On the other hand, the plaintiffs say their witnesses established (a) that there was no need for the work, and (b) that the result of any work would be detrimental.

In response, defendants do not argue with the initial statements of law advanced by the plaintiffs, but rather examine the testimony of their witnesses. Each of the witnesses testified that either special benefits exist or that the method of assessment is acceptable. The defendants then conclude that the trial court's finding of fact was not erroneous.

There was testimony on the record which, if believed, could be used as the basis for the trial court's finding of fact. One of the defense witnesses was Mr. Elmer E. Mueller, Assistant Director for the Detroit City Planning Commission. Part of his testimony was as follows:

*"The Witness:* I contend that there was, your Honor, a definite benefit to the abutting property owners, and I think I cited some of the factors that are relevant to such a determination, the provision for better drainage, elimination of an unsatisfactory situation between the pavement and sidewalk, the providing of the safety to the particular abutting properties, the people that use the abutting property because of the separation by curbing between the

improved highway and the remainder of the road, by the elimination of the gravel portion of the roadway where it was used for parking which created a traffic hazard which might be detrimental to the abutting property and the public as a whole, and the people that use the pavement facility that was abutting the highway were subjected to traffic hazards because they came in and out of the area of the street that was used for parking, and it improved the general appearance of the highway.

"An improved highway as was done here—when you drive east on Cherry Hill to the City of Inkster and notice the difference in the character of the city—the aesthetics of it have been improved.

"*The Court:* [Y]ou feel that over and above the general benefit to the community there is a reasonably substantial benefit to the abutting property owners?

"*The Witness:* I think that it is a *major* benefit."

This Court may not upset a finding of fact unless it is clearly erroneous. GCR 1963, 517.1; *Zitomer* v. *Kelmenson* (1965), 375 Mich 206. Since there was testimony which could act as its basis, the finding of a special benefit is not clearly erroneous.

On issue two, in challenging the special assessments for Inkster Road, plaintiffs raised five claims of variances. Plaintiffs argue that the charges assessed for benefits must be in proportion to the charges levied against others in the assessment district as well as to all who will benefit from the improvement. *I. H. Gingrich & Sons* v. *City of Grand Rapids* (1932), 256 Mich 661; *Crampton* v. *City of Royal Oak* (1961), 362 Mich 503. However, both assessment districts contain a number of variances.

First, they demonstrate a decrease to $18.10 per foot for residential property. Defendants responded by saying this was a nonresidential area. Since

only three of 188 lots were in an area classified as one-family residential, it is not for the Court to say that there was not less benefit accruing to these landowners.

The second variation was the decreased assessment for the church. Defendants did not respond to the *prima facie* inequality established by plaintiffs.

The third variation was in the flat figure assessed to houses in the northeast quadrant. The *prima facie* case of plaintiffs was not answered by defendants.

The fourth variance was the failure to include the width of intersections in determining the per foot cost. Defendants responded that this amount was divided among the accessible roads. However, an examination of the zoning map establishes that this is not so.

The fifth was the variance between the amount authorized by the Inkster City Council and the amount assessed. Defendants did not respond to this variance.

Plaintiffs' objections regarding the Cherry Hill assessment were that again intersections were not included and that residential property was assessed at a lower rate. The responses made by defendants to the Inkster assessments were applicable here and the Cherry Hill assessment district is free from attack. Nor does plaintiffs' citation of Michigan statute alter this conclusion. MCLA § 67.19 (Stat Ann 1961 Rev § 5.1303) refers to fourth-class cities. Inkster, with a population of 38,000, is not governed by that statute.

A review of the law applicable to this appeal establishes that the defendant city had the authority to make the improvements contracted. The trial court made a finding of special benefits which jus-

tified the existence of a special assessment district. This finding had a factual basis and is not clearly erroneous.

More important is the manner in which the different assessment rates were determined. A review of defendants' objections to the Cherry Hill Road assessments established that they are not in violation of any principle of law. However, a review of the Inkster Road assessments demonstrates several problems that call for reversal.

First, the reduction of the church assessment, though perhaps valid, is unsupported before this Court.

Second, there is not a uniform charge per interior home in the different quadrants. The northwest quadrant contained residences equidistant from Inkster with the northeast quadrant. The southeast quadrant is entirely dependent upon Inkster Road for ingress and egress. The northeast quadrant, however, has access to Cherry Hill Road. Yet only the northeast quadrant was assessed.

Third, the costs of the intersecting streets and alleys were neither apportioned among the city at large nor among all the interior residences which gained greater access to ingress and egress.

Fourth, the city assessor did not comply with the total assessment authorized by the council.

We conclude that though the improvements conferred benefits on the property owners, the method of assessing was improper.

Reversed and remanded for further proceedings, retaining no jurisdiction. No costs, a public question.

All concurred.