BATES v GENESEE COUNTY ROAD COMMISSION

Docket Nos. 66893, 66894. Submitted June 20, 1983, at Lansing.—Decided April 16, 1984.

A special assessment for paving a road was placed by the Genesee County Road Commission and Fenton Township against property owned by petitioners, Jack R. and Wanda D. Bates. The petitioners' property had been platted as five separate lots abutting the road although they had built their house on only one of the lots, the others being considered to be "unbuildable". The property was assessed as five separate parcels and the petitioners sought review of the assessments before the Tax Tribunal. The tribunal held that the assessment district was valid and that petitioners' property received a special benefit by having been relieved of the burden of difficult ingress and egress. The tribunal also held that respondents should have assessed the property as one lot, that four of the lots were "unbuildable", that the special assessment district should not have included 105 feet of roadway in front of petitioners' property which had previously been paved nor a portion of the road which passed out of Genesee County into Oakland County, and that the costs of the improvements had been improperly apportioned between the property owners, the township, and the road commission. The tribunal ordered the reapportionment of costs and reassessment of petitioners' property. The Genesee County Road Commission and Fenton Township appealed separately, and the appeals were consolidated by the Court of Appeals, which *held:*

1. The proper standard of review of the findings of the tribunal is whether they are supported by competent, material,

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law §§ 688, 689, 691.
[2] 2 Am Jur 2d, Administrative Law § 688.
[3] 2 Am Jur 2d, Administrative Law §§ 381, 424.
[4] 70 Am Jur 2d, Special or Local Assessments § 21.
[5] 70 Am Jur 2d, Special or Local Assessments § 86.
[6] 70 Am Jur 2d, Special or Local Assessments §§ 9, 104.
[7] 70 Am Jur 2d, Special or Local Assessments § 18.

and substantial evidence on the whole record. Under this standard, the tribunal's finding that the four lots were "unbuildable" was supported by the evidence, and that evidence was not incompetent.

2. The finding that the majority of the traffic on the road was public, rather than generated by the landowners, was supported by the evidence, as was the finding that 105 feet of frontage on petitioners' property was improperly included in the assessment district.

3. The tribunal properly found that the petitioners' land should be treated as one lot. While the respondents argued that the land could potentially be sold as separate lots, and while potential uses of land are proper considerations when determining the benefits of improvements, there was no showing here that respondents had ever considered using the potential-use method of setting assessments.

4. The tribunal had the authority pursuant to statute to reapportion the share of the improvement costs.

5. The tribunal's finding that the value of petitioners' property was not enhanced by the improvement was harmless error, if error at all. Respondents were not prejudiced by the failure to invoke the presumption of validity of the assessment district by an increase in property value, since the district's validity was upheld on other grounds.

6. The tribunal properly concluded that the special assessment placed against petitioners' property was disproportionate to the benefit received. The tribunal therefore properly adjusted the assessment.

Affirmed.

1. ADMINISTRATIVE LAW — TAXATION — TAX TRIBUNAL — SPECIAL
   ASSESSMENTS — REVIEW.

The standard of review of a decision of the Tax Tribunal regarding a special assessment is whether the decision is supported by competent, material, and substantial evidence on the whole record; only in cases involving valuation (determination of true cash value) or allocation (division of a local millage collection) is review limited to decisions based on fraud, error of law, or adoption of wrong principles (Const 1963, art 6, § 28).

2. EVIDENCE — SUBSTANTIAL EVIDENCE.

"Substantial evidence" is that which is more than a mere scintilla of evidence but substantially less than a preponderance of the evidence.

3. Administrative Law — Evidence — Rules of Evidence.

An administrative agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs, subject to the rules of evidence as applied in the courts in nonjury civil cases; furthermore, an administrative hearing officer has the discretion to permit open redirect examination of a witness (MCL 24.275; MSA 3.560[175]; MRE 611).

4. Taxation — Special Assessments — Special Benefit — Use of Property.

The determination of benefit to property for special assessment purposes is not limited to consideration of present use of the property, but may be extended to consideration of potential uses of the property.

5. Taxation — Special Assessments — Costs of Improvements.

The Tax Tribunal has the authority to reapportion among property owners and the taxing body the respective shares of improvement costs in a special assessment district (MCL 205.731[a], 205.732; MSA 7.650[31][a], 7.650[32]).

6. Taxation — Special Assessments — Presumption of Validity — Special Benefit.

The creation of a special assessment district is presumed to be valid; the presumption incorporates the idea that the property in a special assessment district is specially benefited by (1) an increase in the value of the property, (2) relief of an existing burden on the property, or (3) the creation of a special adaptability for the property.

7. Taxation — Special Assessments — Special Benefit.

A special assessment against a parcel of property requires, for its validity to be upheld, that the property sustain a special benefit greater than the benefit realized by the general community and that the assessment is levied in proportion to the benefit received by the property.

*Jose C. Zurita, P.C.,* for petitioners.

*Neithercut, Klapp, Shegos & Dillard* (by *Robert L. Shegos),* for Genesee County Road Commission.

*Bellaris, Dean, Cooley & Siler* (by *John P. Siler),* for Fenton Township.

Before: J. H. GILLIS, P.J., and D. E. HOLBROOK, JR., and J. R. ERNST,* JJ.

PER CURIAM. Respondents Genesee County Road Commission and Fenton Township appeal as of right from a Michigan Tax Tribunal (MTT) opinion and judgment setting aside a special assessment placed against petitioners' property and remanding the cause to the Genesee County Road Commission for reassessment of petitioners' property and other action.

In 1980 through 1981, respondents determined that a 2,880-foot portion of Butcher Road in Fenton Township, Genesee County, should be paved. To accomplish this, respondents created Special Assessment District 258, which included petitioners' property and 14 other properties abutting Butcher Road. Because petitioners' property was platted as five separate lots and a separate sewer tap-in had been installed on each of the five lots, respondents assessed petitioners' property as five separate lots, although petitioners used all five lots as their home and had built a house on only one of the lots (lot 4). Petitioners' assessment for five lots was $11,290.12. Had their property been assessed as one lot, petitioners would have had to pay $4,299.43. No other property was assessed as more than one lot because all other properties were platted as single-lot properties.

Petitioners were also assessed for the improvement of the portion of Butcher Road which abutted lot 5 of their property, although at least some portion of that road had already been improved in an earlier project. The entire assessment district was also required to share in the costs of improving an unidentified portion of Butcher Road which

* Circuit judge, sitting on the Court of Appeals by assignment.

continued past the Genesee County line into Oakland County.

Petitioners protested their assessments and appealed to the MTT. A hearing was conducted by an MTT hearing officer whose proposed opinion and judgment were subsequently adopted and incorporated as the tribunal's decision.

In her proposed opinion, the hearing officer rejected petitioners' first contention that the assessment district had been invalidly created. (This determination is not at issue on appeal.) She also rejected petitioners' claim that their property received no special benefit from the paving of Butcher Road. She concluded that petitioners were relieved of the burden of difficult ingress to and egress from their property and that this relief was greater than that enjoyed by the community as a whole.

However, the hearing officer agreed with petitioners' assertion that respondents had wrongly assessed petitioners' property as five lots instead of one. She also noted that she had found petitioners' lots 1, 2, 3, and 5 to be "unbuildable". Said officer additionally agreed with petitioners' contentions that the special assessment district should not have included 105 lineal feet along Butcher Road where the road had already been paved and the indeterminate portion of Butcher Road after it passed out of Genesee County into Oakland County.

Finally, the hearing officer found that the costs of the improvements had not been apportioned by respondents in proportion to the benefits received by the parties. Under respondent's plan, the property owners in the special assessment district would pay 50 percent of the costs of improvements, Fenton Township 25 percent, and Genesee

County Road Commission 25 percent. However, the hearing officer found that the traffic on said road was 75 percent nonresident and thus redistributed one-half of the residents' share of costs to respondent Genesee County Road Commission so that it would pay 50 percent of said costs, the residents 25 percent, and defendant Fenton Township 25 percent. The case was then remanded so the road commission could comply with the MTT opinion.

I

The first issue raised on appeal is whether the MTT's factual findings that petitioners' lots were unbuildable, that a majority of traffic on Butcher Road was generated by the general public, and that 105 lineal feet of petitioners' property was improperly included in the special assessment district was supported by competent, material, and substantial evidence on the whole record.

We initially note that when reviewing a decision by the MTT in the area of special assessments, the correct standard of review by this Court is whether the decision is supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. Although petitioners contend the correct standard of review is the limited review of the second paragraph of art 6, § 28, we disagree. That paragraph provides:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court *from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation.*" (Emphasis supplied.)

See also *Rogoski v City of Muskegon,* 101 Mich App 786; 300 NW2d 695 (1980). We note that this

limited review standard was intended to apply only to cases of valuation or allocation. Such is not the case herein. The issues before this Court and the Tax Tribunal involve a proportionality of the special assessment to the benefits received by petitioners from the improved road. While value is, to some extent, a factor in this determination, the MTT's decision does not involve "valuation or allocation". Instead, we find these two words are terms of art which refer to the critical determination of true cash value in the case of valuation, and to the division of the constitutionally permitted local millage collection in the case of allocation.

The definition of "substantial evidence" has been variously presented as "more than a mere scintilla of evidence" though "substantially less than a preponderance of the evidence". *Tompkins v Dep't of Social Services,* 97 Mich App 218, 222-223; 293 NW2d 771 (1980).

As to the finding of unbuildability, respondants claim that the only evidence of said came in an unresponsive answer by petitioner Jack Bates and that other evidence preponderates against this incompetent evidence (*i.e.,* Bates's statement that he had never availed himself of Fenton Township's means of declaring a lot unbuildable, the fact that petitioners were able to build their house on lot 4 by filling in, and the fact that a separate sewer tap-in existed for each of the five lots). Having reviewed the record, especially the testimony of Jack Bates, we disagree with respondents' contention that this finding is unsupported by the necessary evidence.

Under direct examination, Jack Bates testified that he had originally consolidated his five lots

into one by quitclaim deed because he felt that most of the land "probably wasn't buildable". He later stated that he was unable to "even walk on them" because the lots were "so wet". Buildability was not addressed on cross-examination, but on redirect examination when petitioners' attorney asked Bates to describe the condition of the lots. Respondents objected because the question was "beyond the scope of cross-examination", but the hearing officer overruled the objection because she needed clarification of the earlier allusion to the lots' being wet.

Contrary to respondents' assertion, Bates's testimony was not incompetent because it was unresponsive or beyond the scope of the cross-examination. An administrative agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs, subject to the rules of evidence as applied in a nonjury civil case. MCL 24.275; MSA 3.560(175). Under MRE 611, it is within the discretion of the trial court (or, in this case, hearing officer) to permit open redirect examination. *Parkdale Homes, Inc v Clinton Twp,* 23 Mich App 682; 179 NW2d 232 (1970). Respondents have not even argued that the hearing officer abused her discretion in permitting Bates to testify from his own experience to clarify a statement made earlier on direct examination, and we cannot find such an abuse.

In addition, Bates's testimony is detailed and clearly describes his own property. Respondents did not object to his testimony on the ground that expert opinion testimony was needed to determine the lots' buildability, and they should not now be able to question the reliability of the testimony on this ground. The hearing officer was certainly

entitled to accept Bates's description of his land as the basis of her finding.

Respondents next argue that there was no support for the MTT's determination that a majority of the traffic on Butcher Road was from the general public because no actual traffic count was admitted into evidence. However, respondents have supplied no authority to support this contention, and defense witnesses provided information which would logically lead to the conclusion that the traffic was headed for the Fenton Lake Sportsman Club (a public club and one of the 15 property owners) or Oakland County.

Having reviewed the record, we believe the MTT's determination that the majority of the traffic on Butcher Road was public is supported by competent, material, and substantial evidence. We find there was no indication that the other 14 landowners were anything but private individuals; their daily traffic could not rival the traffic generated by the public and club functions conducted by the club. While there was no statistical evidence from which the hearing officer could arrive at the 75 percent figure she assigned to this public travel, this figure appears to be a common-sense determination of the proportionality of the residential traffic to the public traffic. Even if only the public attendance at the dances is considered (between 100 and 200 people), it becomes apparent that 14 residences could not have generated anywhere near this amount of traffic during the week.

Finally, respondents challenge the hearing officer's determination that 105 lineal feet of petitioners' property was improperly included in the assessment district. We disagree and hold that the hearing officer's determination is supported by substantial, competent, and material evidence on the whole record.

Jack Bates testified that a portion of Butcher Road had been paved in an earlier project. This pavement extended over 104 to 105 feet past his property line. This figure was determined after Bates measured the pavement with a 100-foot steel rule before the new pavement was added; the new pavement overlapped the old pavement to some unidentified extent. Petitioners also took pictures before the installation of the new pavement.

While there was conflicting evidence from a defense witness, we believe that Bates's testimony is the more reliable. He actually measured the old pavement prior to the addition of the new pavement and took pictures to substantiate his claim. Respondents' claim rests on a comparatively inaccurate method of determining distance and on information obtained after new pavement was placed over the old. The MTT's factual findings are upheld.

## II

Next, respondents contend that the MTT erred by ruling that petitioners' property should have been assessed as one lot, rather than as five separate lots.

Both respondents have, to some extent, distorted the decision of the MTT on this issue. Respondent Fenton Township argues that the MTT erred in ruling that petitioners' property should have been assessed as one parcel instead of as five lots because petitioners could not create a single parcel of real estate, as a matter of law, merely by combining recorded ownership of the property in a single deed by quitclaim deed. Respondent Genesee County Road Commission argues that while the quitclaim deed was not the *only* factor influencing

the MTT's decision, it was the significant one. Instead, the MTT actually ruled that it need not address the significance of the quitclaim deed because the real issue was uniformity of assessment and the rationality of treating petitioners differently from their neighbors simply because petitioners' land was platted differently. While the MTT did mention that the quitclaim deed was sufficient to combine the property for special assessment purposes, it specifically stated that this was not the basis of its decision and it was dictum.

Additionally, respondents make much of the MTT's failure to mention that petitioners' five lots were each equipped with an individual sewer tap-in. Respondents claim that the existence of the tap-ins in conjunction with the platting of the property distinguished petitioners' property from that of their neighbors because potentially petitioners' property was ripe for development.

The hearing officer was fully aware of respondents' argument concerning the sewer tap-ins. She had twice asked the parties to stop focusing on the 1973 special sewer assessment, which involved the tap-ins, because she felt it was irrelevant. In addition, the significance of the tap-ins was doubtful, as Jack Bates explained that he had twice remonstrated with the sewer contractor about putting in five tap-ins when he only wanted one. Bates's requests were turned down because the contractor had contracted with the township to install five tap-ins and he felt he could not unilaterally change his contract.

In addition, Bates repeatedly stated that petitioners used the property as one parcel and that they intended to sell it as one parcel. They had attempted to sell the land in the past and had offered it as one parcel at that time. As stated

previously, Bates was unable to use the lots individually because the lots were too wet, and he considered four of the five lots unbuildable.

In light of the evidence, it was not error for the MTT to reject respondents' claim that petitioners' property had the potential to be sold as individual lots. While the determination of benefit to property is not limited by present actual uses but may be extended to potential uses, *Crampton v Royal Oak,* 362 Mich 503, 516-517; 108 NW2d 16 (1961), the fact of petitioners' property's potential was not the end of the discussion. As the hearing officer noted, other single lots on Butcher Road had larger frontage than did petitioners' five lots together (1,000 feet versus 589 feet). There was no indication by respondents that they had even considered assessing these lots by the potential use method rather than by actual use. Instead, respondents relied solely on the platting and tap-ins as their reasons for assessing petitioners for over 10 percent of the cost of the entire road improvement. This decision was properly overruled by the MTT as a fraud on the taxpayer.

## III

Respondents contend further that the MTT was without authority to reapportion the share of improvement costs between respondent Genesee County Road Commission and petitioners. We disagree. Having examined the arguments presented in respondents' briefs, we find said arguments to be unconvincing in the present situation. We hold that the MTT had jurisdiction to reapportion in the way it did pursuant to MCL 205.731(a); MSA 7.650(31)(a) and MCL 205.732; MSA 7.650(32).[1]

[1] "Sec. 31. The tribunal's exclusive and original jurisdiction shall be:

IV

Respondent Genesee County Road Commission contends that the MTT improperly determined that petitioners' property value was not enhanced by the improvement of Butcher Road. We disagree. A presumption of validity exists as to the creation of the assessment district. *Production Tool Supply Co v City of Roseville,* 74 Mich App 34, 37-38; 253 NW2d 350 (1977). This presumption incorporates the idea that the property included in a special assessment district is specially benefited. Such benefit may occur where the improvement will: 1) increase the value of the property; 2) relieve the property of an existing burden; or 3) create a special adaptability for the property. *Production Tool Supply Co, supra,* p 37. Thus the presumption should have applied to the issue of property enhancement if the hearing officer's determination of special benefit depended on that issue. However, the hearing officer determined that petitioners' property was specially benefited based on the second criterion, *i.e.,* relief of an existing burden.

We hold the hearing officer's failure to invoke the presumption with respect to the first criterion above was harmless error. Respondents were not prejudiced at all by said error since ultimately the hearing officer sustained the validity of the creation of the special assessment district.

"(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws."

"Sec. 32. The tribunal's powers include, but are not limited to:

"(a) Affirming, reversing, modifying, or remanding a final decision, finding, ruling, determination, or order of an agency.

"(b) Ordering the payment or refund of taxes in a matter of which it may acquire jurisdiction.

"(c) Granting other relief or issuing writs, orders, or directives which it deems necessary or appropriate in the process of disposition of a matter of which it may acquire jurisdiction."

## V

Respondent Fenton Township contends that the MTT erred in concluding that the special assessment placed against petitioners' property was disproportionate to the benefit received. Specifically, respondent argues that once the MTT affirms a locality's determination that there is a special benefit to the property, the MTT may not question the assessor's determination of the extent of the benefit. Again we disagree.

In addition to the requirement that a property must sustain a special benefit greater than the benefit realized by the general community, the assessments must also be levied in proportion to the benefit received by the property. *Production Tool Supply Co, supra,* p 37. Under this standard, we hold that MTT properly required an adjustment of the assessment against petitioners' property and had the authority to do so. See *Johnson v Inkster,* 401 Mich 263; 258 NW2d 24 (1977); *Crampton v Royal Oak,* 362 Mich 503; 108 NW2d 16 (1961); *I H Gingrich & Sons v Grand Rapids,* 256 Mich 661; 239 NW 876 (1932), and *Axtell v Portage,* 32 Mich App 491; 189 NW2d 99 (1971).

Respondent Fenton Township also contends that the MTT was required to give the township the right to dispute certain of the MTT's factual findings under MCL 24.277; MSA 3.560(177). Respondent township's first and third allegations have previously been addressed. We held that the findings addressed by said allegations are supported by competent, material, and substantial evidence. Since these issues were clearly before the MTT in the original hearing, the MTT properly denied respondent an additional hearing.

Additionally, the MTT properly did not grant

respondent an additional hearing on the question of the detriment to the petitioners' property from the alleged increased runoff from the paved road. This factual finding was irrelevant to the final outcome of the case. Petitioners raised the issue to show that they suffered detriment, rather than benefit, from the improvement. While the MTT agreed that a detriment did exist from the inundation, the MTT nevertheless found in respondents' favor and concluded that the benefit from the improved road outweighed the asserted detriment. Thus, there was no reason to contest this finding.

## VI

Pursuant to GCR 1963, 820.1(7), we award petitioners $4,963, this amount representing the costs and attorney fees which they incurred before the Tax Tribunal.

Affirmed.