KADZBAN v CITY OF GRANDVILLE

Docket No. 92796. Argued December 9, 1992 (Calendar No. 8). Decided June 22, 1993.

Aloise Kadzban and twenty-six other owners of twenty-eight parcels of real property abutting Canal Avenue between 36th and 44th Streets in the City of Grandville, challenged special assessments for street and utility improvements, claiming an absence of special benefits and an actual decrease in property values as a result of the improvements. The Tax Tribunal upheld the assessments, determining that the plaintiffs failed to prove an absence of special benefits or to show that the special assessments were invalid. The Court of Appeals, Murphy, P.J., and D. E. Holbrook, Jr., and Maher, JJ., reversed in an unpublished opinion per curiam, concluding that little more than a scintilla of evidence had been presented by the city to justify the special assessments (Docket No. 114503). The city appeals.

In an opinion by Justice Griffin, joined by Justices Brickley and Boyle, with Chief Justice Cavanagh concurring only in the result, the Supreme Court reversed the decision of the Court of Appeals.

Justice Griffin, joined by Justices Brickley and Boyle, stated that the record as a whole contains substantial, material, and competent evidence to support the finding of the Tax Tribunal that the value of the plaintiffs' properties increased as a result of the improvements to Canal Avenue.

Special assessments are levies upon property within a specified district. Although resembling taxes, they, rather, are imposed to defray the costs of specific local improvements. Municipalities are not free to levy special assessments, however, without regard for the amount of benefit that inures to the assessed property. To be valid, there must be some proportionality between the amount of the special assessment and the benefits derived.

Municipal decisions regarding special assessments are presumed to be valid, and will be declared invalid only when the party challenging the assessment demonstrates that there is a substantial or unreasonable disproportionality between the amount assessed and the value that accrues to the land. The

question whether and how much the value of land has increased is factual, and such a determination by the Tax Tribunal will be reversed only if its decision is not supported by competent, material, and substantial evidence on the whole record.

In this case, the primary evidence offered by the plaintiffs to show that the value of their properties had not increased was effectively and completely discredited by the city. Other evidence presented by the plaintiffs similarly was unpersuasive. Because special assessments are presumed valid, to effectively challenge special assessments, at a minimum, credible evidence to rebut the presumption must be presented. In this case, no proofs were presented to directly controvert the reasonableness of the costs proportioned to the petitioners. In addition, the city presented substantial evidence of increases in the values of the properties, which, taken together, amount to more than a scintilla of evidence in support of the city's position.

Justice BOYLE, concurring, stated that the starting point in special assessment tax challenges is that the presumption that the assessment is reasonably proportionate to the benefits received and is valid. The plaintiff must overcome that presumption. Where there has been no showing of fraud, mistake, discrimination, or a clear absence of benefits claimed, courts should hesitate to interfere with a legislative determination of the existence or value of the benefit.

Justice RILEY, joined by Justice MALLETT, concurring, stated that the case should be remanded for factual supplementation of the issue of proportionality. A municipality seeking to rest upon the presumption of validity in matters of special assessments must indicate, when challenged in court, that it engaged in a consideration of the benefits to those assessed in contrast to the costs imposed on them. In this case, there is no indication on the record that the defendant gave any reasonable degree of consideration to the issue of proportionality.

Reversed.

Justice LEVIN, writing separately, stated that while the plaintiffs' properties were benefited by the improvements installed, making it appropriate to assess against their properties some portion of the cost incurred in conferring the benefits, the failure to assess any of the cost of the road improvements against the owners of properties on side streets that depend solely or heavily on Canal Avenue for ingress and egress suggests that it was arbitrary to allocate to the plaintiffs the entire cost assessed against them. The extent of benefits resulting from sewer improvements to the plaintiffs and owners of

property abutting proximate side streets, as well as the city at large, is unclear. The case should be remanded to the Court of Appeals, which did not reach this issue, for further consideration of whether the cost of the road and sewer improvements was excessively allocated and assessed against the plaintiffs' property.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Arthur C. Spalding*) for the plaintiffs.

*Varnum, Riddering, Schmidt & Howlett* (by *Randall W. Kraker* and *Teresa S. Decker*) for the defendant.

GRIFFIN, J. This case presents a challenge to the validity of certain special assessments levied against plaintiffs' properties for street and utility improvements. Following a decision by the Tax Tribunal, which upheld the assessments, the Court of Appeals reversed on the ground that insufficient evidence was offered by the city to establish that the assessments conferred a special benefit upon the properties. Because we conclude that the Tax Tribunal's decision is supported by substantial evidence on the whole record, we reverse.

I

In 1984, the City of Grandville approved three special assessment rolls for improvements to Canal Avenue between 36th and 44th Streets. As it was before the improvements, Canal Avenue remains a two-lane road that runs north and south through a residentially zoned area. It serves as the sole outlet for a number of dead-end, residential streets.

All parties agree that before the improvements Canal Avenue was in a state of disrepair, replete with potholes and bumps. Since 1971, the residential and retail population in the surrounding area

had grown significantly, and traffic on the street steadily increased. Despite this increased use, Canal Avenue had not been resurfaced since it was seal-coated in 1969, a method of paving that usually endures for only five or six years. Although plaintiffs contend that without the increased use the deterioration would not have been as extreme, no one disputes that Canal Avenue needed to be refurbished.

Among the improvements approved for Canal Avenue were the installation of a bituminous concrete street surface, curbs and gutters, storm sewers, concrete driveway approaches, water laterals, sewer laterals, and sidewalks. Plaintiffs are twenty-seven owners of twenty-eight parcels of real property abutting Canal Avenue between 36th and 44th Streets. They challenge the special assessment rolls for the street and utility improvements, Special Assessment Rolls 95 and 96; however, they have not challenged the special assessment roll for installation of sidewalks.

Special Assessment Roll 95 was for installation of concrete driveway approaches, water laterals, sewer laterals, and storm drainage improvements. The total expected cost attributable to the Special Assessment Roll 95 improvements was $186,568. Private property owners were assessed seventy-two percent of this amount, or $134,292.

Special Assessment Roll 96 was for installation of a permanent bituminous concrete street. It is undisputed that the typical, improved residential street in Grandville is thirty-two feet wide. The challenged assessment roll provided for the widening of Canal Avenue from twenty-two feet to approximately thirty-six feet, except at intersections, where it was widened to approximately forty feet. No one questions that the extra width was necessary to accommodate a greater traffic flow on

Canal Avenue. The total expected cost attributable to the Canal Avenue improvements was $187,529; however, the assessments imposed upon the abutting property owners did not exceed the cost required to widen the street to thirty-two feet. Accordingly, the abutting private property owners were assessed forty-three percent of the total cost, or $80,760.

The basis of plaintiffs' challenge is a claimed absence of any special benefit to their properties as a result of the improvements to Canal Avenue. In particular, they contend that the improvements resulted in no increase in the value of their properties, and that the improvements actually have decreased the value of their properties because of increases in traffic and traffic speeds.

After a two-day hearing, the tax hearing officer disagreed. He determined that plaintiffs failed to prove that they had not received special benefits as a result of the improvements. In making this determination, the hearing officer did not apply this Court's decision in *Dixon Rd Group v Novi,* 426 Mich 390; 395 NW2d 211 (1986), which was issued after the hearing, but before the officer's proposed judgment. The Tax Tribunal adopted the hearing officer's findings of fact in its opinion and judgment, but disagreed with the officer that the *Dixon Rd* decision should not be applied. However, the tribunal found that, even applying *Dixon Rd,* plaintiffs failed to show that the special assessments were invalid.

On appeal, the Court of Appeals reversed. The Court applied *Dixon Rd,* and concluded that little more than a "scintilla" of evidence had been presented by the city to justify the special assessments.[1]

---

[1] Unpublished opinion per curiam of the Court of Appeals, decided August 7, 1991 (Docket No. 114503).

We granted the city's application for leave to appeal to this Court, 440 Mich 889 (1992), and now reverse.

II

A special assessment is a levy upon property within a specified district. Although it resembles a tax, a special assessment is not a tax. *Knott v City of Flint,* 363 Mich 483, 497; 109 NW2d 908 (1961). In contrast to a tax, a special assessment is imposed to defray the costs of specific local improvements, rather than to raise revenue for general governmental purposes. As the Court explained in *Knott:*

> "There is a clear distinction between what are termed general taxes and special assessments. The former are burdens imposed generally upon property owners for governmental purposes without regard to any special benefit which will inure to the taxpayer. The latter are sustained upon the theory that the value of the property in the special assessment district is enhanced by the improvement for which the assessment is made." [*Id.* at 499, citing *In re Petition of Auditor General,* 226 Mich 170, 173; 197 NW 552 (1924). See also *Cooper, Wells & Co v City of St Joseph,* 232 Mich 255, 260; 205 NW 86 (1925).]

In other words, a special assessment can be seen as remunerative; it is a specific levy designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area. *Kuick v Grand Rapids,* 200 Mich 582, 588; 166 NW 979 (1918); see also *Knott, supra.*

Street and utility improvements are common bases for special assessments. In numerous instances, abutting property has been specially assessed the costs of paving a road or installing a

sewer system. See, e.g., *Kuick, supra; Foren v Royal Oak,* 342 Mich 451; 70 NW2d 692 (1955); *Axtell v City of Portage,* 32 Mich App 491; 189 NW2d 99 (1971). However, not every street improvement primarily benefits the property that abuts the street. Indeed, in some instances, an "improved" street, e.g., one that is widened from a two-lane residential street to a four-lane thoroughfare, may be a detriment to abutting property. *Fluckey v Plymouth,* 358 Mich 447; 100 NW2d 486 (1960). In such instances, we have invalidated special assessments because the assessed property received no special benefit in addition to the benefit that was conferred upon the community as a whole. *Id.*; see also, *Knott, supra; Brill v Grand Rapids,* 383 Mich 216; 174 NW2d 832 (1970).

Recently, we again considered the validity of certain special assessments in our decision in *Dixon Rd,* and we clarified the test for determining the validity of special assessments. An earlier Court of Appeals opinion suggested that there were three alternative bases that would support a finding of special benefits sufficient to justify a special assessment: 1) an increase in the land's value, 2) relief from some burden to the land, or 3) the creation of a special adaptability of the land. *Soncoff v Inkster,* 22 Mich App 358, 361; 177 NW2d 243 (1970). Rejecting that approach, this Court said that special assessments are permissible only when the improvements result in an increase in the value of the land specially assessed. *Dixon Rd, supra* at 400.

In addition, we emphasized in *Dixon Rd* that municipalities are not free to levy special assessments without regard for the amount of benefit that inures to the assessed property. For a special assessment to be valid, "there must be some proportionality between the amount of the special

assessment and the benefits derived therefrom."
*Id.* at 401. In the absence of such a relationship,
the special assessment would be "akin to the
taking of property without due process of law." *Id.*
at 403.

Despite this requirement, our decision in *Dixon
Rd* did not modify the well-settled principle that
municipal decisions regarding special assessments
are presumed to be valid. See *In re Petition of
Macomb Co Drain Comm'r,* 369 Mich 641, 649; 120
NW2d 789 (1963); *Crampton v Royal Oak,* 362
Mich 503, 514-516; 108 NW2d 16 (1961). We said in
*Dixon Rd,* and we reiterate here, that the decisions
of municipal officers regarding special assessments
"generally should be upheld." *Id.* at 403.

Moreover, our decision did not alter the degree
of deference that courts afford municipal decisions.
When reviewing the validity of special assess-
ments, it is not the task of courts to determine
whether there is "a rigid dollar-for-dollar balance
between the amount of the special assessment and
the amount of the benefit . . . ." *Id.* at 402-403.
Rather, a special assessment will be declared in-
valid only when the party challenging the assess-
ment demonstrates that "there is a substantial or
unreasonable disproportionality between the
amount assessed and the value which accrues to
the land as a result of the improvements." *Id.* at
403.

Of course, the question whether and how much
the value of land has increased as the result of
certain improvements is factual, to be determined
on the basis of evidence presented by the parties.
As such, it is to be resolved by the trier of fact—in
this case, the Tax Tribunal. On review, this Court
will reverse a decision of the Tax Tribunal only if
its decision is not supported by competent, ma-
terial, and substantial evidence on the whole rec-

ord. Const 1963, art 6, § 28; 426 Mich 398; see also
*Bates v Genesee Rd Comm,* 133 Mich App 738,
743; 351 NW2d 248 (1984).[2] We turn now to a
review of the evidence presented in this case.

III

In its decision, the Court of Appeals held that
the city did not present sufficient evidence to
support the special assessments. The Court said:

> [W]e find that the proofs in the present case are
> insufficient to support an increase in market value
> as required. Defendant offered absolutely no tangi-
> ble proof of a proportional direct enhancement of
> the abutting property values. Defendant's proofs
> were limited to a critique of the Frederick sales
> ratio study. The evidence on the record before us
> to support a special benefit as determined by the
> *Dixon* test is closer to a scintilla than it is to
> substantial evidence. [Unpublished opinion per cu-
> riam, decided August 7, 1991 (Docket No. 114503),
> p 3.]

We disagree.

Here, the primary evidence presented by plain-
tiffs to show that the value of their properties had
not increased was the expert testimony of Edward
Frederick, a local real estate broker. He described
the residential and commercial growth that oc-
curred in Grandville during the past two decades
and testified that this growth had transformed
Canal Avenue from a rural, residential street to a
"major collector" street. It was his opinion that
because Canal Avenue is a major collector street,

---

[2] It should be noted that in *Dixon Rd* we did not disturb the
findings of fact of the Tax Tribunal. In that case, we accepted its
determination that the assessments were 2.6 times higher than the
increase in value to the land. As a matter of law, we held that this
difference was disproportionate.

the improvements were primarily for the benefit of the surrounding community, not for the benefit of the properties abutting the street.

To support his opinion, Mr. Frederick conducted a sales ratio study,[3] attempting to show that the improvements had no positive effect on the value of the property abutting Canal Avenue. His study included properties abutting Canal Avenue and properties in nearby neighborhoods. Although his findings purported to support plaintiffs' position, the city effectively and completely discredited the study. As noted in the findings of fact, the hearing officer found the study

suspect as to sample sizes and silent as to permissible margin of error; deficient as to a proper foundation for its believability; questionable as the assumptions upon which its credibility rested; challengeable as to the reliability, and arbitrary in the selection of sales used; disproportional and dissimilar in the comparison data available on and off Canal Avenue; and short of the import necessary to overrule the assessments.

The other evidence presented by plaintiffs was similarly unpersuasive. Typical was the testimony of plaintiff Jean Allen. She testified that the resurfaced street was a detriment to the value of her property because cars were driven at faster speeds. The faster speeds made it more difficult for her to exit her driveway, to turn safely, or to cross the street. She further testified that cars could not be driven at those speeds before the improvements because of the condition of the street: "You could take some pretty good licks on the front-end of your car. There were some pretty good holes and

[3] According to plaintiffs' expert, a sales ratio study is a "determination of the sales prices of a group of properties divided into the total assessed values of those same properties . . . ."

bumps." In effect, plaintiff Allen contended that
the deteriorated road, as a hazard to vehicles and
thus a deterrent to speed, would be more appeal-
ing to potential buyers than the improved road.[4]
The hearing officer rejected such assertions. He
found that the record

> simply does not reflect genuineness in petitioners'
> protestations; their testimony in regard to Canal's
> reconstruction having been too uniformly and com-
> pletely at loggerheads with any notion of an im-
> proved environment to be wholly believable.

As noted above, special assessments are pre-
sumed to be valid. Thus, to effectively challenge
special assessments, plaintiffs, at a minimum,
must present credible evidence to rebut the pre-
sumption that the assessments are valid.[5] Without
such evidence, a tax tribunal has no basis to strike
down special assessments. *Axtell v City of Portage,*
*supra* at 497; see also *Johnson v Secretary of*
*State,* 406 Mich 420, 441; 280 NW2d 9 (1979). In
this case, the hearing officer found that the pre-
sumption had not been rebutted: "No proofs were
presented which would directly controvert the rea-
sonableness of the costs proportioned to petition-
ers." On this basis alone, the decision of the Tax
Tribunal was correct and should be upheld.

Moreover, contrary to the assertion of the Court

[4] It should be noted that the speed limit on Canal Avenue was
lowered from thirty-five miles per hour to thirty miles per hour after
the improvements were completed. Kenneth J. Madejczyk, Grand-
ville's Chief of Police, testified that, after the improvements, the bulk
of the traffic on Canal Avenue proceeded about five miles an hour in
excess of the posted speed, as is the case on most streets.

[5] Of course, after plaintiffs present evidence effectively rebutting
the presumption of validity, the burden of going forward with evi-
dence shifts to the city. See *In re Wood Estate,* 374 Mich 278, 289-290;
132 NW2d 35 (1965). At that point, the city must, under *Dixon Rd,*
present evidence proving that the assessments are reasonably propor-
tionate in order to sustain the assessments.

of Appeals, the city did present substantial evidence of increases in the values of plaintiffs' properties. The city presented expert testimony by a local real estate appraiser that three factors critical to property value—appearance, convenience and safety, and maintenance of the improvements —all were enhanced by the improvements to Canal Avenue. Voluminous photographic evidence was presented to show that after completion of the improvements Canal Avenue properties were more aesthetically appealing to potential buyers. Evidence was presented that the improvements led to a decrease in the number of traffic accidents on Canal Avenue, even though accidents had increased elsewhere in the city. Evidence was presented that the street was safer for children traveling to and from school, that it was safer for motorists, and that it was easier to plow and to keep the street clear in the winter. Although specific dollar amounts were not attached to each of these benefits, taken together they certainly make up more than a "scintilla" of evidence in support of the city's position.

In addition, the improvements were shown to be directly linked to significant increases in the marketability and the selling prices of plaintiffs' properties. For example, plaintiff Allen testified that for two years before work began on Canal Avenue, she had been unable to sell her house; however, she immediately sold it after the improvements were completed. More important, she sold her house at a substantially higher price than she had listed it before the improvements, and the sale price included the amount of the special assessments. Another plaintiff testified that he had had similar difficulty selling his house before the improvements, but sold it quickly after the improvements were finished.

On the basis of this evidence, as well as the other evidence presented by the city, the Tax Tribunal determined that the value of plaintiffs' properties increased as a result of the improvements to Canal Avenue. Further, the Tax Tribunal found that the increases "substantially exceeded" the amounts of the special assessments. Because the record, taken as a whole, contains substantial, material, and competent evidence to support this finding, the Tax Tribunal's decision must be upheld.[6]

IV

For the foregoing reasons, the decision of the Court of Appeals is reversed.[7]

---

[6] As an alternative basis for invalidating the assessments, plaintiffs argue that this Court's decision in *Johnson v Inkster,* 401 Mich 263; 258 NW2d 24 (1977), should be applied in this case. In *Johnson,* we struck down special assessments in part because the plaintiffs were required "to defray the cost of rectifying conditions mainly brought about by the public at large and not 'specially and peculiarly' related to the use or needs of persons residing in the assessment district." *Id.* at 271. *Johnson* is inapplicable here. In contrast to this case, *Johnson* involved nonabutting property owners, and it involved the transformation of a two-lane street into a five-lane "major thoroughfare." *Id.* at 270. Further, although Canal Avenue's deterioration was intensified by the increased use of many others besides plaintiffs, the evidence here showed that a seal-coated road needs to be resurfaced every five or six years, even when traffic is less intense than it was on Canal Avenue. This evidence supports the conclusion that, with or without the growth in the surrounding area, Canal Avenue would have deteriorated and required resurfacing. Finally, the city did not assess the entire cost of the road improvements on plaintiffs' properties; it assessed only the costs of a typically improved residential street.

[7] Because we conclude that the record supports a finding of a proportionate increase in the values of plaintiffs' properties, it is unnecessary to address defendant's contention that our decision in *Dixon Rd* should not be applied retroactively in this case. We note, however, that the Court of Appeals mischaracterized the Tax Tribunal's decision regarding this point. The Court of Appeals found that "it was error [for the Tax Tribunal] not to apply the holding in *Dixon* [*Rd*]." (Slip op, p 3.) However, in its opinion and judgment, the Tax Tribunal stated that it did consider *Dixon Rd* to be applicable in this case, and that it did apply *Dixon Rd.*

BRICKLEY and BOYLE, JJ., concurred with GRIFFIN, J.

CAVANAGH, C.J., concurred in the result only.

BOYLE, J. I concur in the reasoning and result of the majority's opinion. I write separately to emphasize that the starting point of analysis in special assessment tax challenges is that there is a presumption that the assessment is reasonably proportionate to the benefits received and is, therefore, valid. Plaintiff subsequently bears the burden of overcoming that presumption. *Auditor General v Maier,* 95 Mich 127, 131; 54 NW 640 (1893); *Crampton v Royal Oak,* 362 Mich 503, 514; 108 NW2d 16 (1961). Where there has been no showing of fraud, mistake, discrimination, or a clear absence of benefits claimed, courts should hesitate to interfere with a legislative determination of the existence or value of the benefit. Such decisions are best made by the legislative bodies charged with levying those assessments. *Frischkorn Investment Co v Detroit,* 257 Mich 546, 552-553; 241 NW 903 (1932).

The opinions issued today do not reach the issue whether *Dixon Rd Group v Novi,* 426 Mich 390; 395 NW2d 211 (1986), should be applied retroactively because this case involves a finding of special benefits as enunciated by the Court of Appeals panel in *Soncoff v Inkster,* 22 Mich App 358, 361; 177 NW2d 243 (1970), and clarified by this Court in *Dixon Rd,* that the increase in the value of the land was sufficient to justify the special assessment. However, we would be presented with a different situation altogether if the presumption of validity for a special assessment rested solely on a special benefit arising either from (1) the relief from some burden to the land, or (2) the creation

of a special adaptability of the land, *Soncoff* at 361. In that instance, we would be confronted with the question whether *Dixon Rd* announced a new rule for determining the validity of special assessments utilizing those approaches and, if so, whether it should be applied retroactively or prospectively.

In all other respects, I concur with the majority.

RILEY, J. I concur in the judgment of the majority. I would, however, remand the case for factual supplementation of the issue of proportionality.

According to *Dixon Rd Group v Novi,* 426 Mich 390, 401; 395 NW2d 211 (1986), "there must be some proportionality between the amount of the special assessment and the benefits derived therefrom."[1] If we are to recognize a presumption of validity in favor of municipalities in matters of special assessments, then the proportionality issue as outlined in *Dixon* must be subsumed into such a presumption. To hold otherwise would be to make a nullity of the proportionality question by subjugating it to the presumption of validity. Accordingly, I believe that a municipality seeking to rest upon its presumption must indicate, when challenged in court, that it engaged in a consideration of the benefits to those assessed in contrast to the costs imposed on them. As noted in the dissent to *Dixon,* "[an] assessment cannot exceed the benefit to be derived from the improvement, for the reason that the only principle upon which the special assessment can be made at all is that the value of the property is enhanced by the expenditure." 426 Mich 407, n 4, quoting *White v Saginaw,* 67 Mich 33, 40; 34 NW 255 (1887).

[1] See also *Crampton v Royal Oak,* 362 Mich 503; 108 NW2d 16 (1961); *Fluckey v Plymouth,* 358 Mich 447; 100 NW2d 486 (1960); *St Joseph Twp v Municipal Finance Comm,* 351 Mich 524; 88 NW2d 543 (1958); *German Lutheran Church Society v Mt Clemens,* 179 Mich 35; 146 NW 287 (1914).

In my opinion, there is no indication on the record that defendant gave any reasonable degree of consideration to the proportionality issue either before the assessment process or following the filing of the instant action. Defendant's proofs before the Tax Tribunal consisted of an attack on plaintiffs' empirical evidence, which took the form of a real estate survey,[2] and intangible concepts such as safety and "curb appeal." The hearing officer, therefore, relied on the presumption of validity to affirm the assessments as supported by "competent, material and substantial evidence on the whole record."[3]

I also believe that plaintiffs make several good arguments worthy of empirical rebuttal. For example, there are approximately seventy homeowners whose property fronts Canal Avenue, yet the two-lane street accommodates between 8,000 and 10,000 vehicles each day. Moreover, it is undisputed that Canal Avenue is a major collector of traffic from relatively recently developed subdivisions whose only access to the rest of Grandville is through use of Canal Avenue.[4] As noted by plaintiffs, this high degree of traffic contributed to the deterioration of the spray-sealed road that they assert was adequate for their purposes. It also belies what I consider to be the primary purpose for the improvements.

[2] In support of their claim, plaintiffs offered the testimony of a realtor who had undertaken a sales ratio study that compared the ratios of assessed values to the sales prices paid from November, 1984, for properties on Canal Avenue and for properties in adjacent subdivisions.

[3] This phraseology constitutes the standard by which appellate courts assess the validity of administrative agencies' decisions. See 1963 Const, art 6, § 28.

[4] The issue what constituted the appropriate assessment district was not preserved for purposes of this appeal. I would think, however, that the benefits noted by defendant arising from the road improvements, such as police and fire services, would also inure to the benefit of all subdivision homeowners whose only access to those very same services is Canal Avenue.

In cases where there is no demonstrable *public* benefit of the nature at issue here, it is easier to conceive of a vague reliance on the presumption of validity in order to affirm the decisions of an assessing municipality. Where the *private* benefits of an improvement to adjoining properties are not so clear, I would prefer to see more record evidence of any asserted benefit before feeling confident in relying upon the presumption of validity. Where courts are going to do away with consideration of the proportionality requirement mandated by the *Dixon* line of cases, they should at the least ascertain whether an assessing municipality considered the costs and benefits to the assessed landowners before concluding that there is sufficient evidence on record to sustain the presumption of validity.[5]

I continue to believe that municipalities should enjoy a presumption of validity and that dollar-for-dollar benefits to assessed landowners is not required. If courts are to avoid the proportionality issue by reliance on the presumption of validity, however, I would require more by way of record proof that an assessing municipality considered the benefits to those who must pay the assessments.

On the basis of the foregoing, I would reverse the decision of the Court of Appeals and remand the case for the purpose of allowing defendant to supplement the record so as to justify its reliance on the presumption of validity.

MALLETT, J., concurred with RILEY, J.

[5] Defendant wisely paid the costs of constructing a larger and more durable road than would ordinarily be necessary for the handful of landowners whose property fronts Canal Avenue. This does not, however, remove the municipality's duty to consider any special benefits of an ordinary roadway to the landowners paying the assessment.

LEVIN, J. (*separate opinion*). I agree with the majority that *Dixon Rd Group v Novi,* 426 Mich 390; 395 NW2d 211 (1986), "did not modify the well-settled principle that municipal decisions regarding special assessments are presumed to be valid"[1] and its conclusion that the record contains substantial evidence to support the Tax Tribunal's finding and decision "that the value of plaintiffs' properties increased as a result of the improvements to Canal Avenue."[2]

I write separately because I do not agree with the majority's disposition of plaintiffs' alternative argument, based on *Johnson v Inkster,* 401 Mich 263; 258 NW2d 24 (1977), that the Canal Avenue improvements did not particularly and specially advantage and benefit plaintiffs' properties. The Court of Appeals did not address this issue, stating that because it found "that the proofs in the present case are insufficient to support an increase in market value as required" by *Dixon Rd,*[3] it "need not address plaintiffs' argument that the Tax Tribunal erroneously failed to apply *Johnson v City of Inkster* . . . ."[4] As in *Brill v Grand Rapids,* 383 Mich 216, 223; 174 NW2d 832 (1970),[5] this issue "has received but casual treatment in

---

[1] *Ante,* p 502.

[2] *Ante,* p 507.

[3] Unpublished opinion per curiam of the Court of Appeals, decided August 7, 1991 (Docket No. 114503), p 3.

[4] *Id.*

[5] In *Brill v Grand Rapids,* 12 Mich App 297; 162 NW2d 840 (1968), the Court of Appeals affirmed the circuit court's decision rejecting the abutting property owners' complaint alleging that no special benefits were conferred by the improvement of a street. This Court reversed stating, on the authority of *Fluckey v Plymouth,* 358 Mich 447; 100 NW2d 486 (1960), that no special benefit was conferred on the homeowners. The Court said that the second question was whether Calvin College should be considered residential property for this purpose. Because of the casual treatment in the briefs of this issue, the Court remanded the cause to the extent it affected Calvin College for the taking of additional testimony and for a new determination of the rights, if any, of Calvin College.

the briefs . . . ." The primary focus of the briefs
in the instant case was on the *Dixon Rd* issue. I
would not bypass the Court of Appeals on this
issue, and would rather remand to the Court of
Appeals for reargument and plenary disposition of
this issue.

I

In *Dixon Rd, supra,* p 403, this Court said that
while decisions respecting "special assessments
generally should be upheld, this Court will inter-
vene where there is a substantial or unreasonable
disproportionality between the amount assessed
and the value which accrues to the land as a
result of the improvements. In this case, the cost
of the improvements is approximately 2.6 times
the increase in value of the properties and for that
reason we hold the special assessment invalid."

In the instant case, the special assessments aver-
aged $3,550 for each of the seventy-five properties
involved. There is evidence that one home, spe-
cially assessed $1,385, sold for $59,500 after the
improvements, and that another home, specially
assessed $4,487 for a double lot, sold for $62,500
after the improvements. Plaintiffs' expert witness
testified that any increase in value was attribut-
able to general improvement in the real estate
market and not to the improvements for which the
special assessments were levied. There was, how-
ever, substantial evidence tending to show that the
sewer, road, and other improvements enhanced the
utility, appearance, and value of plaintiffs' homes.

The plaintiffs contend that because the city did
not "compile some documentary evidence and con-
duct some sort of study or analysis as to the
special benefits which are to be specially assessed,"
the city is not entitled to the presumption of

validity for the special assessments in this case. The plaintiffs cite no authority supporting their contention that such a foundation is a prerequisite to reliance by the city on the presumption of validity.

The Tax Tribunal hearing officer found that the study prepared by plaintiffs' expert witness "was suspect as to sample sizes and silent as to permissible margin of error; deficient as to a proper foundation for its believability; questionable as to the assumptions upon which its credibility rested; challengeable as to the reliability, and arbitrary in the selection, of sales used; disproportional and dissimilar in the comparison data available on and off Canal Avenue; and short of the import necessary to overrule the assessments." The Tax Tribunal adopted the hearing officer's findings of fact and conclusions of law. Although the foregoing characterization of plaintiffs' expert witness' study is arguably incorrect, there is a substantial basis in the record for that characterization and for the conclusion of the Tax Tribunal "that the subject properties did experience increases in value as a result of the special assessment improvements and that the increases in value were . . . reasonably proportional to the amounts specially assessed . . . ."

II

The total cost of the Canal Avenue road improvements was $187,529. The city did not assess the entire cost to the plaintiffs, all of whose homes abutted Canal, because Canal was improved beyond the city's standards for residential streets.

Canal was improved to a width of thirty-six feet, almost as wide as a four-lane road.[6]

The plaintiffs were assessed on the basis of the cost of a thirty-two-foot-wide standard residential street with two-inch asphalt and six-inch gravel base, rather than the cost of the three-inch "bituminous concrete" and eight-inch gravel base actually installed because of the heavy traffic on Canal Avenue. Also deducted from the amount specially assessed against the plaintiffs' property was the cost of improvements at intersections and along the side yards of homes fronting on both Canal and a side street. But the *entire* remaining cost was assessed against the plaintiffs' property, and no amount was assessed against property on side streets feeding into Canal.

Before the installation of the sewer and road improvements that were the subject of the special assessments, Canal Avenue was twenty to twenty-two feet wide, and had a simple, thin-seal coat of bituminous spray surface. Canal was flanked by gravel shoulders and, in most instances, by gravel driveway approaches into abutting properties. Until the late 1960's or early 1970's, the surrounding area was farmland. As stated by the hearing officer, it was "sparsely developed, with cornfield and open spaces predominating," and the houses on Canal consisted of "older farmhouse-type structures and some newer homes, many situated on relatively large parcels . . . ."

There was evidence that until 1971, the Canal Avenue roadway was adequate for local traffic needs. The hearing officer did not find otherwise.

Approximately seventy-five homes on the portion of Canal Avenue subjected to the special assessments ranged in age from over one hundred

---

[6] A four-lane road would have required at least forty to forty-four feet.

to less than ten years. Since the early 1950's, approximately five hundred homes were built on side streets in areas to the east and west of Canal. Canal was the only means of ingress and egress for the homes west of it. It was one means of ingress and egress for homes to the east.

The city had grown considerably since the initial sealcoating of Canal Avenue. In addition to the new residential neighborhoods that depend on Canal for ingress and egress, there are, in the surrounding area, ten commercial enterprises, nine restaurants, five churches, four apartment or condominium complexes, three schools and three shopping centers. A public park and a factory are also located near this part of Canal.

Over eight thousand vehicles use Canal Avenue daily. The seventy-five homes in the special assessment district do not account for that level of traffic. In *Johnson, supra,* pp 270-271, this Court said:

> The principle that persons who "are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby" does not accommodate an assessment to defray the cost of *rectifying conditions mainly brought about by the public at large and not "specially and peculiarly" related to the use or needs of persons residing in the assessment district. The plaintiffs' homes were not specially and peculiarly advantaged by restoring safe and ready access to and from a road adequate to serve their needs and which would have remained adequate but for pre-emptive use emanating from outside the assessment district.* "There has been no enhancement." *Fluckey v Plymouth* [358 Mich 447, 454; 100 NW2d 486 (1960)]. [Emphasis added.]

The heavy use of Canal Avenue resulting from residential and other developments to the east and

west and elsewhere in the city, did indeed result in significant deterioration in the roadway. The plaintiffs assert that rectifying conditions resulting from use or needs of persons not residing on Canal should not be specially assessed against their properties. Clearly, there was no need, from plaintiffs' point of view, to increase the size of the roadway to thirty-six feet from twenty to twenty-two feet. The plaintiffs might have been content with another sealcoating of Canal, which might have been "amply adequate"[7] for their needs without resurfacing with "bituminous concrete."

To be sure, the plaintiffs' properties were benefited by the improvements installed. The utility and appearance was enhanced, and there was evidence that the value of the properties also was enhanced. It would surely be appropriate to assess against plaintiffs' properties some portion of the cost incurred in conferring those benefits. But the failure to assess any of the cost of the road improvements against the owners of properties on side streets that depend solely on Canal for ingress and egress and on the owners of properties that depend heavily on Canal for ingress and egress, suggests that it was arbitrary to allocate to the plaintiffs the entire cost assessed against them.[8]

The majority distinguishes *Johnson* on the basis that it involved nonabutting property owners, the transformation of a two-lane street into a five-lane major thoroughfare, and also because the evidence supports the conclusion that, without regard to the growth in the surrounding area, Canal Avenue would have deteriorated and required resurfacing

---

[7] *Fluckey v Plymouth, supra,* p 452.

[8] The entire cost of the road improvements was assessed against the owners of property abutting Canal, less only the cost attributable to (i) enlarging the road from thirty-two to thirty-six feet, (ii) the intersections with side streets, and (iii) side yards of homes fronting on side streets.

periodically. The majority adds that the entire cost
of the road improvements was not assessed against
plaintiffs' properties, but only the costs of a "typi-
cally improved residential street." *Ante,* p 507,
n 6.

The principle set forth in *Johnson,* precluding
the levy of a special assessment for an amount
greater than the special benefit conferred, applies,
as set forth in *Brill,* without regard to whether the
property being assessed is nonabutting or abuts
the road being improved. Further, in the instant
case, the plaintiff property owners were assessed
for a thirty-six foot road, although the road previ-
ously had been twenty to twenty-two feet in width,
"amply adequate" for those abutting Canal. It
appears that the need for the additional fourteen
to sixteen feet in width was primarily attributable
to the use of Canal Avenue by the owners of
property east and west of Canal, and by others in
the general area.

The plaintiff property owners were thus assessed
for the entire cost of adding ten to twelve feet to
the twenty to twenty-two feet preëxisting width;
the city absorbed the cost of the additional four
feet, from thirty-two to thirty-six. The cost of
periodic resurfacing of Canal Avenue does not
appear, but that evidentiary gap does not tend to
support the effort to distinguish the principle set
forth in *Johnson.*

The record is sparse concerning the sewer as-
sessment, but it appears that this was somewhat
ancillary to the decision to resurface Canal Ave-
nue. If Canal had not been resurfaced at this time,
the sewer assessment might have been deferred,
perhaps indefinitely. The extent of benefits result-
ing from the sewer improvements to plaintiff prop-
erty owners abutting Canal and of any benefits to

property owners on side streets and in the general area, and the city at large, is unclear.

I would remand the case to the Court of Appeals for further consideration of whether the cost of the road and sewer improvements was excessively allocated and assessed against plaintiffs' property.